STATE OF NORTH CAROLINA v. JACOBIE QUONZEL BROCKETT

No. COA06-1005

(Filed 7 August 2007)

**1. Evidence— prior crimes or bad acts—use of same firearm—relevant to identity**

Evidence of prior bad acts (robberies) was relevant to identity and was properly admitted in a prosecution for gang-related first-degree murder and related crimes. There was expert testimony that the TEC-9 firearm used in the killing was the weapon used in the robberies.

**2. Evidence— prior crimes or bad acts—decision to admit— not an abuse of discretion**

The trial judge did not abuse his discretion by admitting evidence of prior bad acts in a gang-related murder prosecution where he held a voir dire hearing, considered the arguments of counsel, and then determined that the probative value of the evidence outweighed any prejudicial effect it may have had. His decision was not arbitrary or unsupported by reason.

STATE v. BROCKETT

[185 N.C. App. 18 (2007)]

**3. Evidence— transcript of prior plea—admissibility**

The trial court did not err in a prosecution for a gang-related murder by admitting the transcript of defendant's plea to three prior armed robberies. The transcript established defendant's admission to having previously used the murder weapon, a limiting instruction was given, the actual judgment or conviction record was not admitted, and the State was required to sanitize the plea to remove references to any charge or crime other than that to which he was pleading guilty.

**4. Evidence— defendant's telephone conversation—discussion of witnesses—profanity—not prejudicial**

The trial court did not err in a first-degree murder prosecution by admitting into evidence a taped telephone conversation between defendant and his brother in which defendant used profanity, discussed witnesses who would testify against him, and discussed his brother's sexual encounters. Defendant's statements about witnesses showed awareness of guilt, and he did not specifically object at trial to other portions of the testimony. The trial court held a voir dire, listened to the recording, heard arguments from counsel, and made a reasoned decision.

**5. Evidence— meaning of gang terms—detective's lay expertise**

The trial court did not err in a gang-related first-degree murder prosecution by allowing a detective to testify about the meaning of slang terms used by defendant and his brother during a taped telephone conversation after refusing to qualify him as an expert. The judge stated that he believed the detective had the training and skills to aid the jury in interpreting the language.

**6. Evidence— gang terminology—meaning of specific terms— variable context**

The trial court did not err by allowing a detective to testify about the meaning of certain gang terminology where defendant asserted that the terms have various meanings depending on the context. It is clear that the testimony was necessary for an understanding of the conversation in issue, defendant did not object to the specific testimony offered, and he cross-examined the detective on his interpretation of only one word. Moreover, the judge instructed the jury that it was the sole judge of credibility.

### 7. Appeal and Error— preservation of issues—challenge at trial on different basis

A contention about a detective's testimony was not preserved for appeal where the testimony was not challenged at trial on this basis.

### 8. Appeal and Error— preservation of issues—not the basis for objection at trial

A contention regarding alteration or supplementation of the transcript of a taped conversation was not the basis for the objection at trial and was not preserved for appeal. A general objection to the witness's testimony did not include these changes or additions.

Appeal by Defendant from judgments entered 17 February 2006 by Judge Quentin T. Sumner in Pitt County Superior Court. Heard in the Court of Appeals 22 February 2007.

*Attorney General Roy Cooper, by Special Deputy Attorney General Norma S. Harrell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliot Walker, for Defendant.*

STEPHENS, Judge.

On 6 March 2005, O'Joshua Roberts ("Roberts") saw Defendant, a member of a street gang in Greenville called the "Fifth Street Boys," at a convenience store in their neighborhood. Defendant told Roberts he was afraid that the "New York Boys," another street gang in Greenville, were "going to kill somebody" because of "some earlier shootings." Defendant then told Roberts that "he was going to get them before they get somebody in our neighborhood." Later that evening, Defendant and Roberts rode bicycles toward a house where they believed certain "New York Boys" were gathered. Roberts knew Defendant had a gun and that Defendant intended to commit a shooting. However, he did not continue to ride with Defendant because he "didn't want to have nothing to do with it." Defendant rode on and Roberts heard "four or five gunshots" and soon saw Defendant "running around the corner." Defendant was running toward his apartment and carrying a gun in his hand. Roberts followed Defendant to his apartment where Defendant gave him the firearm he had been carrying and told him to hide the gun. As a result of the shooting, Jahmel

Little, thirteen years old, was killed and Donique Rich, twenty or twenty-one years old, was seriously injured.

On 28 March 2005, Defendant was indicted on charges of first-degree murder of Jahmel Little and assault with a deadly weapon with intent to kill inflicting serious injury and attempted first-degree murder of Donique Rich. A jury trial was held before the Honorable Quentin T. Sumner in Pitt County Superior Court between 13 and 17 February 2006. At the close of the evidence, the jury returned verdicts finding Defendant guilty on all charges. After the jury returned its verdicts, Defendant admitted to the existence of two aggravating factors involving the attempted murder charge. Specifically, Defendant admitted that he "committed the offense while on pretrial release on another charge" and that the "victim of this offense suffered serious injury that is permanent and debilitating."

Based on the jury's verdicts, Defendant's prior record level of IV, and the admitted aggravating factors, Judge Sumner sentenced Defendant to "life imprisonment without parole" for his conviction of first-degree murder. Judge Sumner imposed a consecutive sentence of 313 months minimum and 385 months maximum imprisonment for Defendant's conviction of attempted first-degree murder. Judge Sumner arrested judgment on Defendant's conviction of assault with a deadly weapon with intent to kill inflicting serious injury.[1] From the judgments entered upon his convictions, Defendant appeals. For the reasons which follow, we hold that Defendant received a fair trial, free of error.

[1] By his first argument, Defendant contends Judge Sumner committed prejudicial error in admitting, over Defendant's objection, evidence regarding Defendant's participation in three armed robberies that occurred approximately two months before the events which are the subject of this case. Defendant argues this evidence violated Rule 404(b) of the North Carolina Evidence Code. This argument is without merit.

We review a trial court's admission of evidence under Rule 404 of the North Carolina Rules of Evidence for an abuse of discretion. *State v. Summers*, 177 N.C. App. 691, 629 S.E.2d 902, *appeal dismissed and disc. review denied*, 360 N.C. 653, 637 S.E.2d 192 (2006). "A trial

---

1. It is unclear from the transcript and record why judgment was arrested on this charge. However, in the briefs submitted, both the State and Defendant allege that this charge was the underlying felony for Defendant's felony murder conviction.

court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

Rule 404(b) provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). The admission of evidence under Rule 404(b) is constrained by how similar in manner and how close in time the prior acts were to the crimes with which the defendant is currently charged. *State v. Abraham*, 338 N.C. 315, 451 S.E.2d 131 (1994).

[E]vidence is admissible under Rule 404(b) of the North Carolina Rules of Evidence if it is substantial evidence tending to support a reasonable finding *by the jury* that the defendant committed a similar act or crime and its probative value is not limited *solely* to tending to establish the defendant's propensity to commit a crime such as the crime charged.

*State v. Stager*, 329 N.C. 278, 303-04, 406 S.E.2d 876, 890 (1991) (citations omitted). Prior crimes or acts by the defendant are deemed similar when there are "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both[.]" *State v. Moore*, 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983) (citations omitted). "However, it is not necessary that the similarities between the two situations rise to the level of the unique and bizarre. Rather, the similarities simply must tend to support a *reasonable* inference that the same person committed both the earlier and later acts." *Stager*, 329 N.C. at 304, 406 S.E.2d at 891 (internal quotations and citation omitted).

In the case at bar, Defendant argues the murder and assault charges are not sufficiently similar to the robberies because (1) the robberies occurred inside a residence and the shooting occurred outside in the street, (2) Defendant allegedly shot at a dog during the robberies, but shot people in this case, (3) Defendant walked to commit the robberies, but rode a bicycle to commit the shootings, (4) Defendant attempted to conceal his identity during the shootings, but

made no such effort during the robberies, and (5) "the *only* similar fact between the charged offenses and the robberies was that defendant allegedly used the same TEC 9 weapon each time." Defendant further asserts that "[b]ecause firearms *always* are used in shootings and *commonly* are used in robberies, this fact, though similar, is not unusual." We are not persuaded.

During the trial, Neal Morin, a special agent with the North Carolina State Bureau of Investigation and an expert in the field of firearm identification, testified that the TEC 9 firearm used to kill Jahmel Little was the same weapon used to commit the robberies to which Defendant pled guilty. From this testimony, it is clear that the evidence regarding Defendant's participation in the armed robberies established more than that Defendant had the propensity to break the law. This evidence established not only that Defendant had used a firearm to commit a crime in the recent past; significantly, it also demonstrated that Defendant had used or had access to the *same* firearm within two months of the shootings. At a minimum, this evidence was relevant to prove identity and plainly supports "a *reasonable* inference that the same person committed both the earlier and later acts." *Id.* Judge Sumner properly ruled that the evidence was admissible under Rule 404(b).

[2] However, in framing his "Question[] Presented" on this issue, Defendant further asserts that the admission of evidence of the three prior armed robberies under Rule 404(b) was prejudicial error. While Defendant does not clearly argue that the admission of this evidence violated Rule 403 of the North Carolina Evidence Code, we believe it is imperative to address this issue.

Pursuant to Rule 403 of the North Carolina Rules of Evidence, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2005). The exclusion of evidence under Rule 403 is a matter left to the sound discretion of the trial judge, and we will reverse a Rule 403 decision of the trial court only when the decision is arbitrary or unsupported by reason. *State v. Hyatt*, 355 N.C. 642, 566 S.E.2d 61 (2002), *cert. denied*, 537 U.S. 1133, 154 L. Ed. 2d 823 (2003).

Here, before permitting the jury to hear evidence regarding the prior armed robberies, Judge Sumner conducted a *voir dire* hearing to take Roberts's testimony, considered arguments of counsel, and

**STATE v. BROCKETT**

[185 N.C. App. 18 (2007)]

then determined that "the probative value offered by the State's proffered . . . evidence in this matter outweighs any prejudicial effect it may have." Judge Sumner properly balanced the potential prejudicial effect of the 404(b) evidence against its probative value. His decision to admit the evidence was not arbitrary or unsupported by reason. We disagree with Defendant that admission of this evidence constituted prejudicial error. Accordingly, this assignment of error is overruled.

[3] Defendant next asserts the trial court committed prejudicial error in admitting over his objection the transcript of his guilty plea to the three armed robberies. Defendant's argument lacks merit.

As discussed *supra*,

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b). Relying on Judge Wynn's dissenting opinion in *State v. Wilkerson*, 148 N.C. App. 310, 319, 559 S.E.2d 5, 11 (Wynn, J., dissenting), *rev'd per curiam for reasons stated in dissenting opinion*, 356 N.C. 418, 571 S.E.2d 583 (2002), and *State v. McCoy*, 174 N.C. App. 105, 620 S.E.2d 863 (2005), *disc. review denied*, —— N.C. ——, 628 S.E.2d 8 (2006), Defendant contends the admission in evidence of his "Transcript of Plea" for the three armed robberies was improper evidence of a "bare conviction" and was unduly prejudicial. However, these cases are distinguishable from the case at bar, and thus, do not control.

In *Wilkerson*, after testimony from two law enforcement officers regarding the defendant's

prior crimes on 15 June and 11 and 12 October 1994, . . . the Deputy Clerk of the Superior Court, Rockingham County, testified that defendant had prior convictions on file in Rockingham County for (1) possession of cocaine on 15 June 1994, (2) possession with intent to sell or deliver cocaine on 11 October 1994, and (3) sale or delivery of cocaine on 11 October 1994.

*Wilkerson*, 148 N.C. App. at 320, 559 S.E.2d at 11. Similarly, in *McCoy*, "the State elicited . . . testimony . . . describ[ing] the underlying facts of an assault committed by the defendant . . . . Following [this] testi-

mony, the State introduced a certified copy of defendant's criminal conviction . . . resulting from the events described[,]" and the trial court admitted both the testimony and the evidence of the defendant's prior conviction. *McCoy*, 174 N.C. App. at 111, 620 S.E.2d at 868. In each case, although the testimony describing the underlying facts of the prior crimes was admissible, the defendant was awarded a new trial due in part to the admission of the "bare fact" of each defendant's prior *conviction*, evidence that would "permit the jury to surmise that the defendant, having once formed the necessary intent or developed the requisite *mens rea*, undoubtedly did so again; after all, another jury ha[d] already conclusively branded the defendant a criminal." *Wilkerson*, 148 N.C. App. at 328, 559 S.E.2d at 16.

In the case at bar, the State first elicited testimony from Roberts, a friend of Defendant who was with him on the night of the shooting and who participated with him in the armed robberies, and from police officer Jason Campbell and Corporal John Jenkins of the Greenville Police Department to establish the underlying facts of the armed robberies. The State then offered in evidence the "Transcript of Plea" by which Defendant, of his "own free will, fully understanding what" he was doing, admitted his guilt to the armed robbery charges. Therefore, the admission of this document constituted more than bare evidence of Defendant's prior conviction. Rather, it was an admission by Defendant that he had participated in the armed robberies. Based on the properly admitted evidence establishing that the same firearm used in the armed robberies was used to murder Jahmel Little, Defendant's guilty plea demonstrated that he admitted having access to or using the murder weapon at a previous time. Furthermore, Judge Sumner gave a limiting instruction to the jury in which he stated:

> Evidence has been received tending to show that . . . defendant, Jacobie Brockett, [was] involved in an armed robbery on or about January 11, 2005 at 1305 West Third Street in Greenville. And further that during that armed robbery, the defendant, Jacobie Brockett, used a TEC 9 to shoot at a dog at 1305 West Third Street. This evidence was received solely for the purpose of showing the identity of the person who committed the crime charged in this case, if it was committed. If you believe this evidence you may consider it, but only for the limited purpose for which it was received.

Because the "Transcript of Plea" established Defendant's admission to having previously used the murder weapon and because Judge

Sumner properly limited the jury's consideration of such evidence, *Wilkerson* and *McCoy* are distinguishable. Moreover, we note that Judge Sumner did not admit in evidence the actual judgment or Defendant's conviction record. Additionally, the trial court required the State to "sanitize" the "Transcript of Plea" to eliminate references to any crime or charge "other than the matter he's pleading guilty to at this time." Furthermore, unlike *Wilkerson* and *McCoy*, where the jury learned that a previous jury "branded" the defendant a criminal, in this case Defendant himself, having first-hand knowledge of his participation in the armed robberies, admitted his guilt to those crimes. Under these circumstances, we hold the trial court did not err in admitting Defendant's "Transcript of Plea." Accordingly, this assignment of error is overruled.

---

**[4]** Next, Defendant argues the trial court committed reversible error by admitting in evidence a taped phone conversation between Defendant and his brother because (1) the conversation was not relevant, (2) this evidence constituted impermissible character evidence, and (3) the profane language on the tape was overly prejudicial. We disagree.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). All relevant evidence is admissible at trial unless specifically excluded by rule or law. N.C. Gen. Stat. § 8C-1, Rule 402 (2005). However, when making an evidentiary ruling a trial court should also consider that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403. Generally, an attempt by a defendant to intimidate a witness to affect the witness's testimony is relevant and admissible to show the defendant's awareness of his guilt. *State v. Mason*, 337 N.C. 165, 446 S.E.2d 58 (1994).

At trial, the State offered in evidence the recording and the transcript of a taped phone conversation between Defendant and his brother. Defendant timely objected on grounds that the tape and transcript were not relevant to the case and were overly prejudicial. However, Defendant did not argue to the trial court that this evidence constituted impermissible character evidence. Therefore, we do not

consider this argument on appeal. *See State v. Woodard*, 102 N.C.
App. 687, 696, 404 S.E.2d 6, 11 (recognizing that "[t]he defendant may
not change his position from that taken at trial to obtain a 'steadier
mount' on appeal") (citing *State v. Benson*, 323 N.C. 318, 372 S.E.2d
517 (1988), *disc. review denied*, 329 N.C. 504, 407 S.E.2d 550 (1991)),
*appeal dismissed and disc. review denied*, 329 N.C. 504, 407 S.E.2d
550 (1991).

A review of the transcript of the conversation between Defend-
ant and his brother reveals that Defendant expressed concern about
a witness who intended to testify against him. When discussing
the witness's potential testimony, Defendant told his brother that
some things the witness had written "will almost f*** me . . man[,]"
and that his brother should "smack" the potential witness.
Defendant's brother warned him not to "talk greasy on the phone"
because their conversation was likely "tapped up." Finally, Defendant
and his brother also discussed other individuals who were "trying to
talk against" Defendant.

Defendant's statements regarding the testimony of potential wit-
nesses and his suggestion that his brother should "smack" a certain
witness to deter him from testifying tend to show Defendant's aware-
ness of his guilt and are thus relevant and admissible under *Mason.*
Moreover, although some portions of the transcript were irrelevant to
the case, including the excessive profanity Defendant used and the
references to Defendant's brother's sexual encounters, because
Defendant did not specifically object to these portions of the tape and
transcript at trial, he did not properly preserve his argument as to
these issues on appeal. *See State v. Jarrette*, 284 N.C. 625, 202 S.E.2d
721 (1974) (noting that where a general objection is made to testi-
mony that is competent in part and incompetent in part, the appellate
court will not assume that the objection was aimed at the incompe-
tent testimony), *vacated in part on other grounds*, 428 U.S. 903, 49
L. Ed. 2d 1206 (1976).

Finally, Defendant has not shown the trial court abused its
discretion in determining that the probative value of the statements
outweighed any prejudicial effect the profane language included on
the tape may have had. In making his decision on the admissibility
of this evidence, Judge Sumner heard *voir dire* testimony to estab-
lish the authenticity of the recording, listened to the recording,
and heard arguments from trial counsel on both the relevance and
the prejudicial effect of the recording. Based on the information

that Judge Sumner considered before determining the admissibility of the recording, it is clear that he made a reasoned decision and did not abuse his discretion. Accordingly, Defendant's argument is overruled.

---

By his fourth and final argument, Defendant contends the trial court committed reversible error by permitting the testimony of James Carlton, a detective with the Greenville Police Department, who interpreted the taped phone conversation between Defendant and his brother. Specifically, Defendant argues that Detective Carlton, while not being admitted as an expert witness, (1) was impermissibly allowed to provide his opinion to the jury regarding the meaning of certain slang terminology used by Defendant and his brother during the phone conversation, (2) was allowed to provide his opinion even though he acknowledged that the same words and phrases have different meanings within different groups, and (3) contradicted or supplemented the transcript of the recording offered by the State.

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C. Gen. Stat. § 8C-1, Rule 702(a) (2005). "Expert testimony is properly admissible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences." *State v. Evangelista*, 319 N.C. 152, 163, 353 S.E.2d 375, 383 (1987). While a trial court should avoid unduly influencing the jury's ability to draw its own inferences, expert testimony is proper in most facets of human knowledge or experience. *State v. Crawford*, 329 N.C. 466, 406 S.E.2d 579 (1991). "In applying the rule, the trial court is afforded wide discretion and will be reversed only for an abuse of that discretion." *State v. Anderson*, 322 N.C. 22, 28, 366 S.E.2d 459, 463, *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988).

When making his objection to Detective Carlton's testimony, Defendant's counsel stated:

> The one thing that concerns me is in his testimony when he says that—that all these words have so many different meanings and it differs from area to area, geography, you know, one gang to another.

**STATE v. BROCKETT**

[185 N.C. App. 18 (2007)]

> We're going to allow him to testify to meanings of words, and that may not be the meaning that's assigned with the word under the context of the statements made on the recording.

> And if that happens and it's incorrect, it could be highly prejudicial to the defendant. So I would just note my objection on that . . .—as much as it's necessary, I just don't think there is a clearly defined dictionary of street gang lingo, and I think that if some of these words are open to interpretation, then the wrong interpretation would be extremely damaging, when, in fact, it's not evidence that should be, under other context.

After hearing Detective Carlton's testimony on *voir dire*, Judge Sumner noted Defendant's objection and allowed Detective Carlton to testify.

**[5]** On appeal, Defendant first argues that because Judge Sumner told the prosecutor "I'm not going to let you qualify [Carlton] as an expert[,]" the trial court erred by permitting a lay witness to offer expert opinion testimony. We are not persuaded by this argument.

In *State v. Wise*, 326 N.C. 421, 431, 390 S.E.2d 142, 148 (citing *State v. Perry*, 275 N.C. 565, 169 S.E.2d 839 (1969)), *cert. denied*, 498 U.S. 853, 112 L. Ed. 2d 113 (1990), our Supreme Court noted that when a

> defendant interposed only general objections to the testimony which is the subject of this assignment of error . . . [and] never requested a specific finding by the trial court as to the witness' qualifications as an expert . . . a finding that the witness is qualified as an expert is implicit in the trial court's ruling admitting the opinion testimony.

When overruling Defendant's objection to Detective Carlton's testimony, Judge Sumner stated:

> Certainly. Your objection is noted, and let's just say this, that the effort here is to get to the truth. The jury has heard this taped conversation, and unless you are versed in this stuff, it doesn't mean anything.

> And I believe that Officer Carlton has the necessary training, experience, and knowledge, based on his exposure as an officer, and training as an officer here in Pitt County and in Nash County, I believe—Rocky Mount—having worked with juveniles who are known to be gang members.

He's indicated, I think, quite willingly, that some terms have different connotations, and he's indicated that for me, I think, succinctly when that was the case. So, I'm going to—now I'm not going to let you qualify him as an expert, mind you.

. . . .

But I do think that he has some training and skills that will aid the jury in interpreting this stuff . . . .

. . . .

I want you to certainly lay the foundation to indicate that . . . this is not just somebody that you brought off the streets to come in . . . .

Although Judge Sumner ruled that he would not allow the prosecutor to qualify Detective Carlton as an expert before the jury, Judge Sumner's statement that he believed Detective Carlton has "training and skills that will aid the jury in interpreting this stuff[,]" and the fact that he allowed Detective Carlton to offer opinion testimony, demonstrate that Judge Sumner concluded that Detective Carlton was qualified to offer expert opinions on the meaning of slang terms. Judge Sumner's statement that he would not allow the prosecutor to "qualify [Carlton] as an expert" indicates only that, to avoid any improper judicial influence on the weight to be given Detective Carlton's testimony, Judge Sumner did not want the jury to hear that Detective Carlton was testifying as an expert. *See Wise, supra* (holding that a trial court's decision to qualify a witness as an expert may be implied from the court's decision to admit testimony that only an expert witness could provide even when the witness has not been qualified as an expert in open court). Accordingly, Defendant's argument challenging the trial court's decision to permit Detective Carlton's testimony is overruled.

**[6]** Defendant next argues the trial court erred in allowing Detective Carlton to testify regarding the definition of certain slang terminology used by Defendant and his brother in their taped phone conversation. Defendant asserts the terms in question can have various meanings depending on the declarant and the context in which the terms are used. For this reason, Defendant argues that an improper definition could have an overly prejudicial effect on the jury.[2]

---

**[7]** 2. Defendant also argues in his brief to this Court that the trial court erred in allowing Detective Carlton's testimony because it contradicted prior *voir dire* testimony of another "expert witness" that the State initially proffered to define the

STATE v. BROCKETT

[185 N.C. App. 18 (2007)]

At trial, when Detective Carlton was giving his interpretation of the slang terms used by Defendant and his brother, Defendant's counsel did not object to any of the specific testimony offered. Furthermore, when given the opportunity to cross-examine Detective Carlton, Defendant's attorney questioned him only on his interpretation of the word "smack." In the context in which the term was used, Carlton testified the term meant to "pistol whip[.]" After reading the transcript of the taped conversation, it is clear that Detective Carlton's testimony was necessary to effectuate an understanding of the conversation because, as Judge Sumner stated, "unless you are versed in this stuff, it doesn't mean anything." Furthermore, in his jury charge, Judge Sumner instructed the jury that they were "the sole judges of the credibility, that is the believability, of each witness" and "the sole judges of the weight to be given any evidence."

With regard to expert witness testimony, the trial court reminded the jury that:

As I have instructed you, you are the sole judges of the credibility of each witness and the weight to be given to the testimony of each witness. In making this determination as to testimony of an expert witness, you should consider, in addition to the other tests of credibility and weight, the witness's training, qualifications, and experience or lack thereof, the reasons, if any, given for the opinion; whether the opinion is supported by facts that you find from the evidence; whether the opinion is reasonable; and whether it is consistent with other believable evidence in the case[.]

You should consider the opinion of an expert witness, but you are not bound by it. In other words, you are not required to accept an expert witness's opinion to the exclusion of the facts and circumstances disclosed by other testimony.

From this charge, it is plain that Judge Sumner clearly and repeatedly reminded the jury that they were the sole judges of the credibility of expert and lay witnesses and of the weight to be given their testimony. Therefore, although Detective Carlton admitted that some of the words to which he testified can have different meanings, Judge

slang terms. Because that witness was the sister of the murder victim, Judge Sumner refused to let her testify to the jury. However, Defendant did not challenge Detective Carlton's testimony before the trial court for this reason. Consequently, the argument has not been properly preserved and we do not consider it on appeal. See N.C. R. App. P. 10(b)(1).

Sumner left the ultimate determination to the jury. Accordingly, based on the *voir dire* testimony, the attorneys' arguments heard by Judge Sumner and the instructions he gave to the jury, the trial judge did not err in determining that any prejudicial effect of an allegedly improper definition was outweighed by the probative value of Detective Carlton's testimony. Defendant's argument is without merit.

[8] Finally, Defendant asserts that the trial judge committed prejudicial error by allowing Detective Carlton to alter or supplement the transcript of the taped conversation offered in evidence by the State. At no time, however, did Defendant's trial counsel object to Detective Carlton's testimony in this regard. Furthermore, the general objection that Defendant's trial attorney made before Detective Carlton testified to the jury did not include as grounds for the objection the changes or additions to the transcript that Detective Carlton described during his testimony on *voir dire*. Therefore, any error regarding this alleged improper testimony has not been preserved. *See* N.C. R. App. P. 10(b)(1) (requiring that "to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling . . . if the specific grounds were not apparent from the context"); *Woodard,* 102 N.C. App. at 696, 404 S.E.2d at 11 (recognizing that "[t]he defendant may not change his position from that taken at trial to obtain a 'steadier mount' on appeal") (citing *Benson, supra*). Accordingly, this argument is dismissed.

For the reasons stated, we hold that Defendant received a fair trial, free of error.

NO ERROR.

Judges McGEE and CALABRIA concur.