IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-987

Filed 20 February 2024

Cumberland County, No. 18CRS59382

STATE OF NORTH CAROLINA

　　　　　v.

ALKEEM HAIR, Defendant.

Appeal by defendant from judgment entered 24 March 2022 by Judge Claire V. Hill in Superior Court, Cumberland County. Heard in the Court of Appeals 9 May 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Marc X. Sneed, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Candace Washington, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from a judgment for first-degree murder, robbery with a dangerous weapon, and intimidating a witness. Defendant alleges (1) the trial court abused its discretion in denying a jury request to review the trial transcript; (2) the trial court abused its discretion in joining the witness intimidation charge with his other two offenses; and (3) the trial court plainly erred in admitting cell phone and geo-tracking data evidence without proper authentication. We conclude there was no error.

## I. Background

The State's evidence tended to show that on 16 July 2018, Ms. McArthur was outside when she heard gunshots. Ms. McArthur saw two men outside her daughter's house: Defendant, whom she had seen at her daughter's house before, and another man, Mr. McIver. Ms. McArthur saw Defendant going in and out of her daughter's house, wrapping something in a bandana, and Mr. McIver standing in the yard. Ms. McArthur heard Defendant tell Mr. McIver to "hurry up" because he thought she would call the police. Ms. McArthur then saw the men get into a white Charger driven by Mr. Johnson.

Ms. McArthur found her daughter dead on the sidewalk. Ms. McArthur knew her daughter sold drugs and kept marijuana in a glass mason jar, a plastic bag, and a little black and white purse. Ms. McArthur went into her daughter's house and took the plastic bag and the black and white purse containing drugs. Ms. McArthur also looked for, but did not see, her daughter's new iPhone bought two weeks earlier.

On 6 August 2019, Defendant was indicted for first-degree murder and robbery with a dangerous weapon. On 9 July 2021, Defendant and Mr. Johnson were both in custody and being transported. Mr. Johnson was in handcuffs and leg irons, but Defendant did not have handcuffs. Defendant hit Mr. Johnson once in the jaw. When Defendant was questioned about hitting Mr. Johnson, he answered, "that's my co-defendant. He trying to testify on me and give me life in prison." On 11 October

2021, a superseding indictment combined a witness intimidation charge with the murder and robbery charges.[1]

Thereafter, the State made a motion to consolidate the witness intimidation charge with the murder and robbery charges. Defendant opposed the State's motion and made a motion to sever. The trial court ultimately granted the State's motion to join the charges and denied Defendant's motion to sever. Defendant renewed his motion to sever at the start of and during the trial.

During Defendant's trial, Mr. Johnson testified against Defendant as to all three charges. Mr. Johnson stated he drove Defendant and Mr. McIver to the victim's home to buy marijuana. Mr. Johnson said he heard gunshots about five minutes after Defendant entered the victim's house. Mr. Johnson testified that while in the car he saw Defendant pass a gun and a glass mason jar of marijuana to Mr. McIver. According to Mr. Johnson, after Defendant and Mr. McIver ran out of the victim's home, Mr. Johnson drove them to Defendant's girlfriend's trailer. Further, once at Defendant's girlfriend's trailer, Mr. Johnson shot at a dog with the same gun that Defendant had passed to Mr. McIver. The shell casings from the two shooting scenes matched.

A jury found Defendant guilty of all offenses, and the trial court sentenced him to life imprisonment without the possibility of parole for the robbery and murder

---

[1] Ultimately, Mr. Johnson was not Defendant's co-defendant at trial as he pled guilty to accessory after the fact to first-degree murder and robbery with a dangerous weapon."

charges and 14-26 months for witness intimidation to run at the end of his life sentence. Defendant appeals.

## II. Defendant's Arguments

Defendant contends (1) the trial court abused its discretion in denying a jury request to review the trial transcript; (2) the trial court abused its discretion in joining a witness intimidation charge to his remaining offenses; and (3) the trial court plainly erred in admitting cell phone and geo-tracking data evidence that was improperly authenticated. We analyze each of these arguments in turn.

## A. Jury Request to Review the Trial Transcript

During deliberations, the jury asked for transcripts of testimony from the case. The trial court denied the request. Defendant contends the trial court did not have the "knowledge and understanding of the material circumstances surrounding the jury's request" as the trial court did not ask which witness the jury was concerned about nor how long it would take to produce the transcript. Defendant further contends the trial court failed to realize how important the testimony may have been to the jury because there was only testimony from two witnesses.

Defendant provides no case law to support any specific requirement for the trial court to ask about details or the importance of the jury's request before deciding how to rule on the jury's request. Indeed, "[a] trial court's ruling in response to a request by the jury to review testimony or other evidence is a discretionary decision, ordinarily reviewable only for an abuse thereof." *State v. Long*, 196 N.C. App. 22, 27,

674 S.E.2d 696, 699 (2009) (citation omitted). "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Walters*, 209 N.C. App. 158, 163, 703 S.E.2d 493, 496 (2011) (citation omitted).

North Carolina General Statute Section 15A-1233(a) sets the procedure for the trial court's handling of requests from the jury to review "certain testimony or other evidence." N.C. Gen. Stat. § 15A-1233(a) (2021). Section 15A-1233(a) states:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, the jurors must be conducted to the courtroom. The judge in his discretion, after notice to the prosecutor and defendant, may direct that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.

*Id*.

In *State v. Ashe*, 314 N.C. 28, 33-34, 331 S.E.2d 652, 656 (1985), our Supreme Court summarized the duties of the trial judge when faced with this type of request from the jury:

> This statute imposes two duties upon the trial court when it receives a request from the jury to review evidence. First, the court must conduct all jurors to the courtroom. Second, the trial court must exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue.

*Id.*

Here, the trial court satisfied both of its duties under North Carolina General Statute Section 15A-1233(a) by bringing all jurors into the courtroom and using its discretion to deny the request. *See* N.C. Gen. Stat. § 15A-1233(a). When the jury made a request to review testimony, the judge brought the jury into the courtroom, answered the request, and explained the reason for her decision by saying:

> The jury has the responsibility of recalling all of the evidence. To begin rehearing particular parts of the testimony would tend to emphasize part of the evidence without it giving equal time to other parts of evidence in this case and for that reason it's best to not have one part of the evidence repeated for you.

We conclude the trial court did not abuse its discretion in denying the request.

## B. Consolidation of Charges

Defendant next contends that joining the witness intimidation charge with the murder and robbery charges for trial was improper because the witness intimidation charge is not transactionally related to the robbery or murder charges, and he suffered prejudice because of the joinder and the trial court's denial of his motion to sever.

### 1. Motion to Join

We review the issue of joinder in two steps. *State v. Montford*, 137 N.C. App. 495, 498, 529 S.E.2d 247, 250 (2000). "First, the two offenses must have some sort of transactional connection. Whether such a connection exists is a question of law, fully

reviewable on appeal." *Id.* (citation omitted). If, after *de novo* review, we determine the trial court did not err in finding a transactional connection between the charges, then in the second step we consider whether the trial court abused its discretion in consolidating the charges for trial. *See id.* In this step, we consider "whether the accused can receive a fair hearing on more than one charge at the same trial, i.e., whether consolidation hinders or deprives the accused of his ability to present his defense." *Id.* (citation and quotation marks omitted).

North Carolina General Statute Section 15A-926 allows the trial court to join offenses when they "are based on the same act or transaction or on a series of acts *or* transactions connected together *or* constituting parts of a single scheme or plan." (emphasis added). N.C. Gen. Stat. § 15A-926(a) (2021). Courts favor consolidation because it "expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once." *State v. Boykin*, 307 N.C. 87, 91-92, 296 S.E.2d 258, 261 (1982). *State v. Montford* identifies four factors a court may consider in deciding whether the charges to be consolidated for trial are transactionally related:

> [S]imilarity of crimes alone is insufficient to create the requisite transactional connection. Rather, consideration must be given to several factors, no one of which is dispositive. These factors include: (1) the nature of the offenses charged; (2) any commonality of facts between the

offenses; (3) the lapse of time between the offenses; and (4)
the unique circumstances of each case.

*Montford*, 137 N.C. App at 498-99, 529 S.E.2d at 250.

As to the first factor, "the nature of . . . [Defendant's] offense" was allegedly intimidating a witness in his robbery and murder trial. The intimidation was directly linked to the robbery and murder charges and Defendant was aware Mr. Johnson may testify against him on those charges. *Id.* at 498, 529 S.E.2d at 250. On the second factor, the "commonality of [the] facts[,]" the facts of the crimes are different, but Mr. Johnson testified about the robbery and murder and Defendant had assaulted him because Defendant did not want him to provide this testimony. *Id.* at 499, 529 S.E.2d at 250. As to the third factor, "the lapse of time[,]" about two years had elapsed between the initial charges and the intimidation of a witness charge. *Id.* As to the fourth factor, the "unique circumstances of each case[,]" Defendant's own words linked the intimidation of a witness charge to the robbery and murder charges. Defendant stated he struck Mr. Johnson because he believed him to be his co-defendant in the robbery and murder trial who would testify against him. *See id.* Ultimately, we conclude the charges were transactionally related as the intimidating a witness charge is predicated on Defendant's beliefs about his robbery and murder trial.

We must next consider whether the trial court abused its discretion in consolidating the charges for trial. *Id.* at 498, 529 S.E.2d at 250. Defendant contends

that "[t]he witness intimidation charge caused the jury to presume . . . [his] guilt as to the other offenses and gave Mr. Johnson's testimony significantly more weight." However, the evidence of Defendant's intimidation of Mr. Johnson would have been admissible in the murder and robbery trial even if the charges had been separately tried. *See generally State v. Brockett*, 185 N.C. App. 18, 26, 647 S.E.2d 628, 635 (2007) ("Generally, an attempt by a defendant to intimidate a witness to affect the witness's testimony is relevant and admissible to show the defendant's awareness of his guilt.").

In *State v. Brockett*, the State presented evidence of the defendant's statement to his brother about a witness who may testify against him. *See id.* at 26-27, 647 S.E.2d at 635. The

> Defendant told his brother that some things the witness had written "will almost f*** me. man[,]" and that his brother should "smack" the potential witness. Defendant's brother warned him not to "talk greasy on the phone" because their conversation was likely "tapped up." Finally, Defendant and his brother also discussed other individuals who were "trying to talk against" Defendant.

*Id.* This Court determined the evidence was admissible because the defendant's "suggestion that his brother should 'smack' a certain witness to deter him from testifying tend[ed] to show [the d]efendant's awareness of his guilt and [was] thus relevant and admissible." *Id.* The Court further determined "the probative value of the statements outweighed any prejudicial effect the profane language included on the tape may have had." *Id.* at 27, 647 S.E.2d at 636. Although the defendant's

objections in *Brockett* were based on different legal arguments than here, *see id.* at 26, 647 S.E.2d at 635, the admissibility of evidence of threats to a witness regarding his testimony undercuts Defendant's arguments regarding prejudice or an abuse of discretion. The evidence of Defendant's assault upon Mr. Johnson and his own statement about the reason for this assault would have been admissible in his murder and robbery trial even if the intimidation of a witness charge had been tried separately, thus obviating Defendant's rationale for his argument against joinder of the charges for trial. *See generally Brockett*, 185 N.C. App. at 26, 647 S.E.2d at 635.

### 2. *Motion to Sever*

Once the charges were joined for trial, Defendant made a motion to sever the charges and the trial court denied this motion. As to Defendant's motion to sever, North Carolina General Statute Section 15A-927 requires the court to grant a severance motion before trial if "it is found necessary to promote a fair determination of the defendant's guilt or innocence of each offense;" or "[i]f during trial . . . it is found necessary to achieve a fair determination of the defendant's guilt or innocence of each offense." N.C. Gen. Stat. § 15A-927(b) (2021). "The question before the court on a motion to sever is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial." *State v. Bracey*, 303 N.C. 112, 117, 277 S.E.2d 390, 394 (1981). "The court must determine whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the

law intelligently as to each offense." *Id.* The trial court's ruling on a motion to sever "will be overturned only upon a showing that [it] abused [its] discretion." *Id.* Here, Defendant makes no argument that the case was so complex that the witness intimidation charge made the evidence indistinguishable or that the jury could not intelligently apply the law.

Likewise, Defendant has not demonstrated that severance of the charges would be required for a "fair determination of . . . [his] guilt or innocence of each offense" since evidence of the intimidation would be admissible in a separate trial for the murder and robbery charges, and evidence of the murder and robbery charges would be admissible in a separate trial of the intimidation charges, since Defendant's stated reason for hitting Mr. Johnson was his potential testimony against Defendant on the murder and robbery changes. *See generally Brockett*, 185 N.C. App. at 26, 647 S.E.2d at 635. Thus, for similar reasons as we determined the joinder of charges was not an abuse of discretion, we conclude the trial court did not abuse its discretion in denying Defendant's motions to sever.

## C. Hearsay

Finally, Defendant contends the trial court erred in admitting "cell phone records, geo tracking evidence, and Investigator Potter's testimony about the tracking location of [the victim's] cell phone[.]" Specifically, Defendant argues the "State failed to lay any foundation demonstrating the records fell under an applicable hearsay exception."

Defendant admits he didn't object at trial, and thus is subject to plain error review. Under the "plain error rule"

> the defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result. This Court has often noted that the plain error rule is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice.

*State v. Rourke*, 143 N.C. App. 672, 675-76, 548 S.E.2d 188, 190 (2001) (emphasis in original) (citations, quotation marks, and alterations omitted).

Even generously assuming the trial court erred by allowing in the cell phone and geo-tracking evidence, Defendant has not shown plain error. *See id.* Ms. McArthur, a witness familiar with Defendant, heard gunshots and saw her daughter deceased on the ground. Ms. McArthur saw Defendant at the scene of the murder, and placing Defendant at the scene of the murder was the main purpose of the cell phone and geo-tracking data. Further, Mr. Johnson testified he drove Defendant to the victim's house, saw Defendant with a gun, and smoked marijuana from a jar that matched Ms. McArthur's description of a jar missing from her daughter's home. In addition, the shell casings at the victim's home and the residence where Defendant shot the dog matched. We conclude the trial court did not commit plain error in allowing the cell phone and geo-tracking evidence.

### III.    Conclusion

We conclude there was no error.

NO ERROR.

Judges WOOD and GRIFFIN concur.