STATE OF NORTH CAROLINA v. ROBERT PAUL RAINEY

No. COA08-1466

(Filed 4 August 2009)

**1. Evidence— hearsay exception—party admissions—motion in limine—taped conversations while incarcerated**

The trial court did not abuse its discretion in a double armed robbery and assault with a deadly weapon inflicting serious injury case by the denial of defendant's motion *in limine* to exclude taped telephone conversations made by defendant to others while he was incarcerated because: (1) the telephone conversations qualify as party admissions under N.C.G.S. § 8C-1, Rule 801(d), an exception to the hearsay rule which is applicable if the statement is offered against a party and it is his own statement; (2) defendant failed to show unfair prejudice based on the admission of this evidence; (3) the taped conversations were probative in that defendant indicated he was aware of his guilt since in each of the conversations defendant appears to be coordinating an alibi with third parties or discussing the intimidation of witnesses; and (4) defendant failed to make his Confrontation Clause argument at trial, and thus it was not properly preserved for review.

**2. Identification of Defendants— photographic lineups— motion to suppress**

The trial court did not err in a double robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by denying defendant's motion to suppress the pretrial photographic lineups and the identification of defendant by

two witnesses through this procedure because: (1) the victims were not informed of the identity of the photographs selected or the persons in the photographs selected; (2) while there was some significant age difference between the individuals in the photographic array, that fact was not apparent from the photographs, and there was no identifying data on the photographic array; (3) all individuals appearing in the array were the same sex and race, and had similar hair color and styles, similar complexions and similar facial hair to defendant; (4) the array was presented in a nonsuggestive fashion; and (5) the identification procedure did not result in a substantial likelihood of misidentification.

**3. Discovery— alleged violations—concealed statement—notice—disclosure provided substance of testimony**

The trial court did not err in a double robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by concluding there was no discovery violation under N.C.G.S. § 15A-903 even though defendant contends he was not made aware of a witness's testimony prior to trial that defendant stated during the robbery, "I hope this spic is dead" because: (1) our Supreme Court has held that delivery of a synopsis of a defendant's oral statements in response to discovery requests complies with the substance requirement of the statute; (2) nothing in the statute entitles a defendant to have the prosecutor to provide him with a description of the facts and circumstances surrounding his statements; and (3) the State provided defendant with notice that the witness claimed "they hated Mexicans," and this disclosure provided the substance of the witness's testimony and was adequate, for the purpose of the discovery statute, to prevent unfair surprise.

**4. Evidence— flight—failure to appear in court—arrest**

The trial court did not err in a double robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by allowing testimony concerning defendant's 2006 failure to appear in court, his arrest in Ohio, and his return to North Carolina because: (1) North Carolina has long followed the rule that an accused's flight from a crime shortly after its commission is admissible as evidence of guilt; (2) the fact that defendant left the state and failed to appear for court can be construed as evidence of flight in this case; and (3) regarding the argument that the flight was not shortly after the crime, this tem-

poral consideration goes to the weight of the evidence rather than its admissibility.

## 5. Evidence— prior crimes or bad acts—assault—sufficiently similar and close in time

The trial court did not abuse its discretion in a double robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by admitting N.C.G.S. § 8C-1, Rule 404(b) evidence regarding an assault incident that took place on 15 August 2003 involving defendant and three others because: (1) the prior assault demonstrated a particular fighting style, defendant fighting alongside another person or in a group against a victim, and the witness's testimony was properly admitted for the purpose of demonstrating defendant's method of operation or a common plan or scheme; (2) the witness's testimony illustrated defendant's use of witness intimidation, similar to that seen in Exhibits 55-58; (3) the evidence of the 15 August 2003 altercation was sufficiently similar to the 7 March 2004 crime; (4) the State pointed out at trial that there were ten similarities, including largely the same individuals being present at both incidents and the fact that drugs and alcohol were involved, defendant had attacked the victim at both fights with the help of others after taking the victim to an isolated location, and defendant was the oldest member in the group during both affrays and acted as a ringleader; and (5) the evidence was admitted for a proper purpose, the incident was sufficiently similar and close in time, and the testimony was not unduly prejudicial to defendant.

## 6. Criminal Law— instruction—flight

The trial court did not err in a double robbery with a dangerous weapon and assault with a deadly weapon inflicting serious injury case by submitting a flight instruction to the jury because: (1) there was evidence in the record reasonably supporting the theory of flight; and (2) defendant's failure to appear on the 6 February 2006 court date amounted to evidence that defendant took steps to avoid apprehension.

Appeal by defendant from judgment entered 14 February 2008 by Judge Christopher M. Collier in Rowan County Superior Court. Heard in the Court of Appeals 20 May 2009.

*Attorney General Roy A. Cooper III, by Assistant Attorney General Kevin Anderson, for the State.*

*James N. Freeman, Jr. for defendant-appellant.*

HUNTER, Robert C., Judge.

Robert Paul Rainey ("defendant") appeals from final judgments entered against him in Rowan County Superior Court pursuant to jury verdicts finding defendant guilty of: (1) two counts of robbery with a dangerous weapon; and (2) one count of assault with a deadly weapon inflicting serious injury. Defendant was sentenced to two consecutive terms of 146 to 185 months imprisonment. After careful review, we find no error.

## I. Background

The State's evidence tended to show that on 7 March 2004, defendant, Ian Mill ("Mill"), Tony Williams ("Williams"), Bryan Merrill ("Merrill"), Oscar Mendoza ("Mendoza"), and Jamika Gadson ("Gadson") arrived at the home of Billy Roberts ("Roberts"). Before the gathering at Roberts's house, Mill had called defendant, Williams, and Merrill to inform them that Mendoza would be arriving with a large amount of money, and the three men decided to rob Mendoza. At some point during the evening, Mendoza and Mill left Roberts's home together. Mendoza testified that he and Mill planned to go to a grocery store, while Mill testified that Mendoza wanted to go purchase drugs. Mill testified that defendant had told him to drive Mendoza to meet defendant, Williams, and Merrill behind a church, the prearranged location for the robbery.

Once Mill and Mendoza arrived at the church, defendant aimed a shotgun at Mendoza, who ran, but was caught by the group. Mendoza was beaten and robbed. At trial, Mendoza testified that defendant hit him with the shotgun during the altercation and stated, " 'I hope this spic is dead.' " Mendoza also testified that four people from the party were behind the church at the time of the robbery, including defendant, Mill, Williams, and Merrill. Mill testified that defendant, Merrill, and Williams were indeed present. Mill also testified that defendant hit Mendoza with the shotgun during the robbery.

After being treated and released from the hospital, Mendoza gave a statement to Sergeant Tim Wyrick ("Sergeant Wyrick"), a police officer with the Rowan County Sheriff's Office investigating the robbery. Mendoza told Sergeant Wyrick about the robbery and later contacted

him when he recalled the names of his attackers. Sergeant Wyrick presented Mendoza with photographic line-ups, from which Mendoza identified defendant and Mill.

Jamika Gadson was also present at Roberts's residence on 7 March 2004, but did not go to the church where Mendoza was robbed. Gadson testified that when defendant, Merrill, and Williams returned, they proceeded to rob everyone in the trailer. Gadson testified that defendant hit him in the face with a shotgun. Sergeant Wyrick also investigated the assault and robbery of Gadson after his release from the hospital. Gadson was shown the same photographic line-ups, from which he identified defendant.

## II. Analysis

### A. Taped Telephone Conversations

[1] Defendant first argues that the trial court erred in failing to grant his motion *in limine* to exclude taped telephone conversations made by defendant to others while he was incarcerated. Defendant argues that these taped calls are inadmissible hearsay, more prejudicial than probative, and that they are barred by the Confrontation Clause.[1] Defendant's arguments are without merit.

"The trial court has wide discretion in ruling on motions *in limine* and will not be reversed absent an abuse of discretion." *State v. Maney*, 151 N.C. App. 486, 491, 565 S.E.2d 743, 746 (2002). With regard to evidence that has been admitted over a hearsay objection, this Court reviews the trial court's decision *de novo. State v. Miller*, 197 N.C. App. 78, 87-88, 676 S.E.2d 546, 552 (2009).

The recorded conversations at issue, presented at trial as Exhibits 55-58, were between defendant and Melissa Garrison ("Garrison"), with Ian Mill or Cami Mill ("Cami") taking part in several three-way calls. Sergeant Wyrick testified that he recognized the voices on the recordings as defendant, Garrison, Mill, and Cami. Defendant told Garrison in call number five, "You gonna have to help me get out of here. You know how stupid—you can't believe

---

1. Although no order appears in the record, the trial judge apparently denied this motion. At the start of trial, the attorneys made redactions to the conversations before the court. The conversations were played for the jury during trial over objection. On appeal, defendant does not argue that specific portions of the redacted calls presented to the jury constituted hearsay; rather, he argues that the conversations as a whole should not have been admitted. Defendant does not argue that the specific statements of the other parties involved in these recordings are hearsay.

how stupid that s— was, I was just showing off, you know what I'm saying?"

In other calls, defendant attempts to coordinate a cover story. Call number eleven starts with defendant telling Garrison "This is the deal—this is what I want Cami, Ian, Christy,—everybody, OK?" Defendant then outlines a version of events, saying, "[E]verybody saw that there was a fight, but there was [sic] no guns and there was no . . . motherf—— robbery." Defendant continues, "I'm going to prison, OK? I accept that, but I'm trying to minimize it. . . . I'll take the charge for kicking the Mexican's a—, but there was no robbery, all ya'll are my witnesses, all I did was kick his a—." Defendant then asks Garrison to repeat the story and they finalize the details.

The recorded conversations also depict defendant making plans to interfere with witness testimony. In call number four, defendant tells Mill, "You need to tell this motherf—— something, man, he can get some money, he can get some dope, or whatever, you know what I'm saying? . . . He don't need to pursue this, man." Also, defendant says, "[W]hile you're free . . . you need to get these motherf—— to retract that s—. . . . Look, I don't give a f—— money, dope, death threats—whatever, you know what I'm saying?" In call number five, defendant tells Mill and Garrison, "If they'll say what I g—— want 'em to say, the g—— charges will be dropped. That's what we need, cause we all [sic] in a motherf—— bind . . . ."

After reviewing the telephone conversations, we find that they qualify as party admissions, an exception to the hearsay rule, which is applicable if the statement "is offered against a party and it is [] his own statement . . . ." N.C. Gen. Stat. § 8C-1, Rule 801(d) (2007). The evidence at trial tended to show that the statements in Exhibits 55-58 were made by defendant and offered against defendant.[2]

Defendant also argues that the admission of the taped conversations offers little probative value, which is outweighed by undue prejudice. The decision of a trial judge to admit evidence in the face of a Rule 403 objection is given much deference; exclusion on 403 grounds is "left to the sound discretion of the trial judge" and will be reversed only "when the decision is arbitrary or unsupported by reason." *State v. Brockett*, 185 N.C. App. 18, 23, 647 S.E.2d 628, 633 (2007); N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

---

2. Again, defendant does not argue on appeal that any statements made by third parties constitute hearsay.

While all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial. *State v. Weathers*, 339 N.C. 441, 449, 451 S.E.2d 266, 270 (1994); *see also State v. Lambert*, 341 N.C. 36, 50, 460 S.E.2d 123, 131 (1995). The meaning of " 'unfair prejudice' " in the context of Rule 403 is " 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.' " *State v. DeLeonardo*, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986) (quoting Commentary, N.C. Gen. Stat. § 8C-1, Rule 403 (1985)). Defendant has not demonstrated any such improper basis.

The evidence presented in *State v. Daniel*, 333 N.C. 756, 429 S.E.2d 724 (1993) is similar to that in the case at bar. There, the defendant claimed that evidence of a taped telephone conversation he had with a sheriff was unfairly prejudicial. *Id.* at 765, 429 S.E.2d at 730. In the conversation, the defendant admitted shooting the victims and threatened another individual with bodily harm. *Id.* at 765-66, 429 S.E.2d at 730. The judge in *Daniel* determined that the taped conversation was probative because the admissions demonstrated "defendant's mental state at the time of the shootings[,]" and was not unfairly prejudicial. *Id.* at 766, 429 S.E.2d at 730.

Similarly, the taped conversations in the present case are probative in that defendant indicates he is aware of his guilt. In each of the conversations, defendant appears to be coordinating an alibi with third parties or discussing the intimidation of witnesses, both of which provide evidence of guilt. "Generally, an attempt by a defendant to intimidate a witness to affect the witness's testimony is relevant and admissible to show the defendant's awareness of his guilt." *Brockett*, 185 N.C. App. at 26, 647 S.E.2d at 635. Here, we find that the prejudicial effect of Exhibits 55-58 did not outweigh the probative value.

Defendant further argues that the recorded conversations were barred by the Confrontation Clause. Defendant did not properly preserve this issue for review. N.C.R. App. P. 10(b)(1). In his motion *in limine*, defendant did not object on Confrontation Clause grounds. Defendant did object on constitutional and due process grounds at several points during the redaction hearing, but did not specifically object on Confrontation Clause grounds.

"In order to preserve a question for appellate review," the defendant must object "stating the *specific* grounds for the ruling the party desired the court to make if the specific grounds were not apparent

from the context." *Id.* (emphasis added). "A general objection, when overruled, is ordinarily not adequate unless the evidence, considered as a whole, makes it clear that there is no purpose to be served from admitting the evidence." *State v. Jones*, 342 N.C. 523, 535, 467 S.E.2d 12, 20 (1996); *see also, State v. Perkins*, 154 N.C. App. 148, 151-52, 571 S.E.2d 645, 647-48 (2002) (holding that two general objections were insufficient to properly preserve the issue).

Defendant did not specifically identify the Confrontation Clause as the grounds for his objection as required by Rule 10(b)(1). The general constitutional and due process objections made during trial were not sufficiently specific to preserve the issue for appellate review. N.C.R. App. P. 10(b)(1).

In sum, we find no error in the trial court's admission of Exhibits 55-58 as the statements of defendant qualify as admissions of a party opponent under Rule 801(d) and were not unduly prejudicial. We decline to address defendant's arguments based on constitutional grounds, which were not properly preserved. The trial court did not err in denying defendant's motion *in limine.*

### B. Suppression of Photographic Line-up Identification

**[2]** The second issue on appeal concerns the denial of defendant's motion to suppress the pre-trial photographic line-ups; specifically, Mendoza's and Gadson's identification of defendant through said procedure. Defendant argues that the witnesses' identifications were based on photographic line-ups that were impermissibly suggestive and resulted in a substantial likelihood of misidentification.

When reviewing a trial court's denial of a motion to suppress, "this Court must determine whether competent evidence supports the trial court's findings of fact. Findings of fact supported by competent evidence are binding on appeal." *State v. Fisher*, 141 N.C. App. 448, 451, 539 S.E.2d 677, 680 (2000) (citation omitted). Additionally, the trial court's conclusions of law are reviewed *de novo. Id.* The reviewing court "must not disturb the court's conclusions if they are supported by the court's factual findings." *Id.* at 451-52, 539 S.E.2d at 680.

" '[D]ue process does not require that all participants in a lineup be identical, all that is required is that a lineup be a fair one and that the officers conducting it do nothing to induce the witness to select one participant rather than another.' " *State v. Fisher*, 321 N.C. 19, 25, 361 S.E.2d 551, 554 (1987) (quoting *State v. Grimes*, 309 N.C. 606, 610,

308 S.E.2d 293, 295 (1983)). However, " '[i]dentification evidence must be excluded as violating a defendant's right to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is a very substantial likelihood of irreparable misidentification.' " *Id.* at 23, 361 S.E.2d at 553 (quoting *State v. Harris*, 308 N.C. 159, 162, 301 S.E.2d 91, 94 (1983)). This analysis is comprised of two steps:

> First, the Court must determine whether the pretrial identification procedures were *unnecessarily* suggestive. If the answer to this question is affirmative, the court then must determine whether the unnecessarily suggestive procedures were so *impermissibly* suggestive that they resulted in a substantial likelihood of irreparable misidentification. Whether a substantial likelihood exists depends on the totality of the circumstances.

*Id.* at 23, 361 S.E.2d at 553 (emphasis added) (citations omitted). There are several factors to be considered in this analysis, including

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself."

*Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154 (1977)).

To determine whether a pretrial identification procedure is suggestive, the court should consider: (1) "whether the accused is somehow distinguished from others in the line-up or in a set of photographs"; and (2) "whether the witness is given some extraneous information by the police which leads her to identify the accused as the perpetrator of the offense." *State v. Wallace*, 71 N.C. App. 681, 684, 323 S.E.2d 403, 406 (1984) (Police provided photos of the individuals in the line-up with number tags, but the defendant had a police identification sign with a case number on it. While not approving of the practice, this Court held that this was not suggestive enough to make a misidentification substantially likely.).

Here, defendant contends that most of the men in the photos were not close in age to defendant and defendant was the only one wearing a red shirt. Defendant also points out that the photo line-up was shown to the witnesses together rather than separately.

Additionally, defendant argues that because both witnesses were shown the same line-up with defendant's picture in the same location within the line-up, this contributed to the impermissible suggestiveness. We find defendant's argument to be without merit.

The trial court made the following findings of fact in its order, which addressed the factors and considerations detailed in *Fisher* and *Wallace*:

> 7. The victims were not informed of the identity of the photographs selected or the persons in the photographs selected.
>
> . . . .
>
> 9. While there was some significant age difference between the individuals in the photographic array, that fact was not apparent from the photographs, and there was no identifying data on the photographic array.
>
> 10. All individuals appearing in the array were the same sex and race, and had similar hair color and styles, similar complexions and similar facial hair to the defendant.
>
> 11. The array was presented in a nonsuggestive fashion.[3]

These findings of fact are supported by the testimony given by Sergeant Wyrick, who administered the line-ups. Sergeant Wyrick testified that he deliberately selected individuals for the line-up with similar facial features. Sergeant Wyrick further claimed that he followed established police protocols when he gave Mendoza and Gadson the necessary instructions required to conduct the identification. Furthermore, there was no information listed on the photographic line-ups concerning those depicted.

From these findings, the court made the following conclusions of law:

> [T]he Court concludes as a matter of law that the pretrial identification procedure involving the defendant was reliable and was not productive of a substantial likelihood of misidentification given the totality of the circumstances surrounding the pretrial identification procedure, in that

---

3. The trial judge noted that "looking at the photographs, I'm not sure I've ever seen a lineup that had more similar looking individuals, and I've looked at dozens of them."

A. The witnesses' opportunity to view the accused and observe the physical characteristics of the accused was ample and sufficient to gain a reliable impression of the accused at the time of the crime.

B. The witnesses' degree of attention was strong and focused on the accused during the time the witness viewed the accused both prior to and at the scene of the crime.

C. The witnesses' level of certainty that the accused was the same person the witness observed at the scene of the crime was firm and unequivocal.

D. The time lapse between the crime and the pretrial identification procedure was not so long as to significantly diminish the witnesses' ability to make a strong and reliable identification of the perpetrator.

E. All of the circumstances and events surrounding the crime and the pretrial identification procedure support the conclusion that the identification testimony by the witness possesses sufficient aspects of reliability.

These conclusions, based on the findings supported by the testimony at trial, directly addressed four of the five factors from *Fisher*. After considering the evidence, the trial judge held that the identification procedure did not result in "a substantial likelihood of misidentification . . . ."

Based on the trial court's findings of fact, which were supported by the evidence, and the conclusions of law, we find that the trial court did not err in denying defendant's motion to suppress the photographic line-ups.

## C. Discovery Violation

[3] Mendoza testified at trial that defendant stated during the robbery, " 'I hope this spic is dead.' " Defendant argues that he was not made aware of Mendoza's testimony prior to trial and therefore, the trial court erred in overruling defendant's objection to the statement. Defendant claims that the State provided information to defendant prior to trial that Mendoza stated, " 'they' kept saying they hated Mexicans"; however, "nothing was attributed to Mr. Rainey, and certainly not the racial and ethnic slur testified to at trial." On appeal, defendant argues that this amounts to a violation of the discov-

ery requirements of N.C. Gen. Stat. § 15A-903 (2007), which requires the State to

> "[m]ake available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant. The term "file" includes the defendant's statements, the codefendants' statements, witness statements, investigating officers' notes, results of tests and examinations, or any other matter or evidence obtained during the investigation of the offenses alleged to have been committed by the defendant.

N.C. Gen. Stat. § 15A-903(a)(1).

"[T]he purpose of discovery under our statutes is to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." *State v. Payne*, 327 N.C. 194, 202, 394 S.E.2d 158, 163 (1990). " 'Determining whether the State failed to comply with discovery is a decision left to the sound discretion of the trial court.' " *State v. Workman*, 344 N.C. 482, 507, 476 S.E.2d 301, 315 (1996) (quoting *State v. Jackson*, 340 N.C. 301, 317, 457 S.E.2d 862, 872 (1995)).

"Our Supreme Court has held that delivery of a synopsis of a defendant's oral statements in response to discovery requests complies with the 'substance' requirement of [the statute]." *State v. Johnson*, 136 N.C. App. 683, 692, 525 S.E.2d 830, 836 (2000). Additionally, "[n]othing in [§ 15A-903], however, entitles a defendant to have the trial court order the prosecutor to provide him with a description of the 'facts and circumstances surrounding his statements.' " *State v. Bruce*, 315 N.C. 273, 278, 337 S.E.2d 510, 514 (1985) (quotation omitted).

Section 15A-903 has been amended several times and does not have an express substance requirement in its current form. However, case law continues to use a form of the substance requirement for determining the sufficiency of disclosures to a defendant. In *State v. Zamora-Ramos*, the defendant argued that testimony should not have been allowed because "the State did not provide the defendant with detailed written accounts of each of the statements made by [the witness] . . . ." 190 N.C. App. 420, 423, 660 S.E.2d 151, 153 (2008). The Court disagreed with the lack of sufficient detail argument because the defendant had been provided with all files, notes from meetings, and "notice of the substance of [the witness's] statements"; therefore,

the defendant was not unfairly surprised by the admission of the testimony. *Id.* at 424, 660 S.E.2d at 155.

Here, the State provided defendant with notice that Mendoza claimed "they hated Mexicans." This disclosure provided the substance of Mendoza's testimony and was adequate, for the purpose of the discovery statute, to prevent unfair surprise. Accordingly, the trial court did not err in allowing the testimony over defendant's objection.

### D. Failure to Appear and Extradition

[4] Defendant claims that testimony concerning his 2006 failure to appear in court, his arrest in Ohio, and his return to North Carolina was irrelevant and more prejudicial than probative. According to defendant, this testimony is only evidence of a subsequent bad act, and since it occurred two years after the crime at issue, its probative value was outweighed by its prejudicial effect. The trial court overruled defendant's relevancy objection.

"North Carolina has long followed the rule that an accused's flight from a crime shortly after its commission is admissible as evidence of guilt." *State v. Self*, 280 N.C. 665, 672, 187 S.E.2d 93, 97 (1972). Evidence of flight does not create a presumption of guilt, but is to be considered with other factors in deciding whether the circumstances "amount to an admission of guilt or reflect a consciousness of guilt." *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 698 (1973). Where there are factors suggesting flight, "the jury must decide whether the facts and circumstances support the State's contention that the defendant fled." *State v. Norwood*, 344 N.C. 511, 535, 476 S.E.2d 349, 360 (1996). Additionally, " '[w]here the prosecution can show in a criminal case that the accused has become a fugitive from justice,' such a fact can be considered on the question of his guilt." *State v. Hairston*, 182 N.C. 911, 914, 109 S.E. 45, 47 (1921) (quoting Charles Frederic Chamberlayne, Hand Book on the Law of Evidence 424 (Arthur W. Blakemore and Dewitt C. Moore eds., Matthew Bender & Company) (1919)).

In the present case, there were indictments issued on 29 March 2004 and superceding indictments issued on 27 February 2006. Sergeant Wyrick testified that defendant failed to appear for a court date on 6 February 2006. A warrant was issued for defendant's arrest for the failure to appear. An electronic database confirmed that defendant had been arrested in Ohio, after which the district attorney's office had defendant extradited back to North Carolina.

The fact that defendant left the state and failed to appear for court can be construed as evidence of flight in this case. *See State v. Williamson*, 122 N.C. App. 229, 232, 468 S.E.2d 840, 843 (1996) (holding that a "reasonable view of this evidence is that defendant, by failing to. appear for trial, attempted to avoid prosecution for the offenses charged"). As for the argument that the flight was not shortly after the crime, this temporal consideration goes to the weight of the evidence, rather than its admissibility. *See State v. Mash*, 305 N.C. 285, 288, 287 S.E.2d 824, 826 (1982).

The leaving of the state, coupled with the failure to appear in court, is evidence of flight and is thus relevant to the question of guilt. *See Hairston*, 182 N.C. at 914, 109 S.E. at 47. Thus, the trial court did not err in allowing this evidence to be submitted at trial.

### E. Admissibility of 404(b) Testimony

[5] The court held a hearing to determine the admissibility of the Rule 404(b) evidence regarding an incident that took place on 15 August 2003 involving defendant, Crystal Green ("Green"), Mill, and Adam Anderson ("Anderson"). The court conducted a *voir dire* of Green, Anderson, and Mill. After hearing the testimony of each witness, the court ruled that Green's testimony was "relevant, that it is permissible and will be admitted under Rule 404(b)." The court also ruled that Green's testimony had probative value not outweighed by its prejudicial effect. However, the testimonies of Anderson and Mill were excluded as unduly prejudicial.

At trial, Green testified that on the evening of 15 August 2003, a group including herself, defendant, Mill, Anderson, and Williams went to a local club where they consumed alcohol and drugs. Green testi-' fied that there was a disagreement between defendant and Anderson. The group then left the club and went to Mill's mobile home, where a fight broke out between Williams and Anderson. Defendant joined in, both he and Williams beating Anderson until he was lying on the ground injured. Mill tried to break up the fight. Green also testified that when she spoke to defendant later about the fight, he intimidated her by angrily crushing a beer can and telling her she had "better not go to court."

On appeal, defendant argues that the trial court erred in allowing the 404(b) testimony of Green because the evidence was irrelevant, too dissimilar to be admitted under 404(b), and its prejudicial effect outweighed any probative value.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2007). The statute lists several proper purposes, but this list is not exclusive; even if the evidence does not fall under a stated purpose, it may still be admissible. *State v. Blackwell*, 133 N.C. App. 31, 34, 514 S.E.2d 116, 119 (1999). Courts have described 404(b) as "a general rule of inclusion." *State v. West*, 103 N.C. App. 1, 9, 404 S.E.2d 191, 197 (1991).

Rule 404(b) evidence is subject to both a "similarity" and a "temporal proximity" analysis. *State v. Barnett*, 141 N.C. App. 378, 389-90, 540 S.E.2d 423, 431 (2000). The prior incidents offered as 404(b) evidence must be "sufficiently similar and not so remote as to run afoul of the balancing test between probative value and prejudicial effect set out in Rule 403." *West*, 103 N.C. App. at 9, 404 S.E.2d at 197. The ruling of a trial court "to admit or exclude evidence" is reviewed for abuse of discretion. *State v. Smith*, 99 N.C. App. 67, 71, 392 S.E.2d 642, 645 (1990).

The trial court found that because the prior assault testified to by Green demonstrated a particular fighting style, (defendant fighting alongside another person or in a group against a victim), Green's testimony was properly admitted for the purpose of demonstrating defendant's method of operation or a common plan or scheme. Furthermore, Green's testimony illustrated the defendant's use of witness intimidation, similar to that seen in Exhibits 55-58. We agree with the trial court's reasoning.

The 404(b) evidence of the 15 August 2003 altercation was sufficiently similar to the 7 March 2004 crime. The State pointed out at trial that there were ten similarities, including largely the same individuals being present at both incidents and the fact that drugs and alcohol were involved. Another similarity is that defendant had attacked the victim at both fights with the help of others after taking the victim to an isolated location. Also, defendant was the oldest member in the group during both affrays and acted as a ringleader.

Additionally, the temporal proximity requirement is satisfied by this evidence. The prior incident occurred on 15 August 2003, while the crime in the present case occurred on 7 March 2004. These events are relatively close in time. In *State v. Carter*, 338 N.C. 569, 451 S.E.2d 157 (1994), the court was willing to admit 404(b) evidence that occurred eight years before the crime in question because " 'remote-

ness in time generally affects only the weight to be given such evidence, not its admissibility.' " *Id.* at 588-89, 451 S.E.2d at 167-68 (quoting *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 881 (1991)).

Finally, Rule 404(b) evidence is subject to the analysis of Rule 403, balancing probative value with prejudicial effect on the defendant. The determination of admissibility of evidence under Rule 403 " 'is a matter that is left in the sound discretion of the trial court, and the trial court can be reversed only upon a showing of abuse of discretion.' " *State v. Moses*, 350 N.C. 741, 761, 517 S.E.2d 853, 866 (1999) (quoting *State v. Hipps*, 348 N.C. 377, 405-06, 501 S.E.2d 625, 642 (1998)). The trial court ruled that the probative value of Green's testimony was not outweighed by the prejudicial effect. We find no abuse of discretion in the trial court's determination.

Because the evidence was admitted for a proper purpose, the incident was sufficiently similar and close in time, and the testimony was not unduly prejudicial to the defendant, we find that the trial court did not err in ruling that Green's 404(b) testimony was admissible.

## F. Instruction on Flight

**[6]** Defendant next argues that a flight instruction to the jury was not supported by the evidence.

" '[I]n order to justify an instruction on flight there must be some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged.' " *State v. Riley*, 154 N.C. App. 692, 696, 572 S.E.2d 857, 860 (2002) (quoting *State v. Fisher*, 336 N.C. 684, 706, 445 S.E.2d 866, 878 (1994)). If an appellate court finds " 'some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given.' " *State v. Ethridge*, 168 N.C. App. 359, 362-63, 607 S.E.2d 325, 328 (2005) (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). To merit an instruction on flight, the defendant's leaving of the crime scene must be bolstered by " 'some evidence that defendant took steps to avoid apprehension.' " *State v. Beck* 346 N.C. 750, 758, 487 S.E.2d 751, 756-57 (1997) (quoting *State v. Thompson*, 328 N.C. 477, 490, 402 S.E.2d 386, 392 (1991)).

Applying the facts of the present case, at some point after the March 2004 incident, defendant fled to Ohio. This is some evidence that defendant left the area after the commission of the crime.

Defendant subsequently failed to appear in court on 6 February 2006. Missing a court date by leaving the state after the commission of a crime indicates "'steps to avoid apprehension" as described in *Beck*. *Id.* Courts have also found that missing a court date can be sufficient evidence to merit an instruction on flight. *See State v. Robertson*, 57 N.C. App. 294, 297, 291 S.E.2d 302, 304 (1982).

The trial court did not err in instructing the jury on flight as there was evidence in the record reasonably supporting the theory of flight, and defendant's failure to appear on the 6 February 2006 court date amounted to evidence that defendant took steps to avoid apprehension.

### Conclusion

The trial court did not err in denying defendant's motion *in limine* concerning the telephone conversations, in denying the motion to suppress the photo line-ups, in overruling the objection to Mendoza's testimony, in admitting evidence of the failure to appear and extradition from Ohio, in admitting the 404(b) testimony of Crystal Green, or in charging the jury on flight.

No error.

Judges STEELMAN and GEER concur.