An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-12

NORTH CAROLINA COURT OF APPEALS

Filed: 7 October 2014

STATE OF NORTH CAROLINA

> v.

MELVIN LEE LUCKEY

Union County
Nos. 10 CRS 56329;
11 CRS 2523; 13 CRS 717

Appeal by defendant from judgment entered 4 June 2013 by Judge Christopher W. Bragg in Union County Superior Court. Heard in the Court of Appeals 12 August 2014.

> *Attorney General Roy Cooper, by Assistant Attorney General Mary Carla Hollis, for the State.*

> *Anne Bleyman for defendant-appellant.*

BRYANT, Judge.

Where a co-defendant was produced in-court for purposes of identification by a witness, the trial court did not err in admitting the in-court identification. Where there was sufficient similarity between defendant's two prior armed robberies and the current armed robbery, the Rule 404(b) evidence was properly admitted. And, where the evidence

supported a finding that defendant had been convicted of a felony in 1997, the trial court did not err in denying defendant's motion to dismiss the charge of possession of a firearm by a felon. We find no error in defendant's convictions.

Defendant Melvin Lee Luckey was indicted on two counts of attempted first-degree murder, two counts of robbery with a dangerous weapon, larceny of a firearm, two counts of conspiracy to commit robbery with a dangerous weapon, and two counts of possession of a firearm by a felon. The matters came on for trial 12 May 2013 in Union County Superior Court, the Honorable Christopher W. Bragg, Judge presiding.

The evidence at trial tended to show that on 1 November 2010, Robbie and Crystal Jordan—husband and wife and co-owners of a Department of Motor Vehicles (DMV) License Plate Agency in Monroe—closed their business for the day and were walking to their respective vehicles when Crystal Jordan was approached by co-defendant Otis Howie, Jr. Howie demanded the bank deposit bag Crystal was carrying. Howie then shot Crystal four times before shooting Robbie several times. Howie took the bank deposit bag and Crystal's purse before crossing the parking lot and going out of sight. At trial, Robbie identified Howie as

the shooter. Within two hours of the time of the shooting, surveillance video recorded Howie and defendant purchasing shoes at Sportrax, an athletic shoe retail store on Wilkinson Boulevard in Charlotte, a short distance from Monroe.[1] Both Howie and defendant paid for their respective purchases with large bills—"fifties or hundreds."

On the evening of 10 November 2010, defendant visited his girlfriend Tanika Ingram at her apartment. She testified that defendant "just started rambling on."

> He just like talking -- . . . him and Otis [] had robbed the DMV. And I was like the DMV . . . ? And he was like yeah, but he was like he don't know why Otis had shot the people because he was like he wasn't supposed to shoot them. He was like the way it was supposed to go down; it was going to be a cut and dry deal. He said all Otis had to do was go up there, rob the people, get back in the car, and they come back to Charlotte.

At the close of the evidence, the jury returned guilty verdicts against defendant as to both counts of attempted first-degree murder, both counts of robbery with a dangerous weapon, larceny of a firearm, both counts of conspiracy to commit robbery with a dangerous weapon, and two counts of possession of a firearm by a felon. The trial court arrested judgment on the

---

[1] Charlotte and Monroe, North Carolina are approximately 25 miles apart.

charges of larceny of a firearm, one count of conspiracy to commit robbery with a dangerous weapon, and one count of possession of a firearm by a felon. Defendant was then sentenced to a term of 342 to 420 months for each count of attempted first-degree murder, 111 to 143 months for the first count of robbery with a dangerous weapon, 139 to 176 months for the second count of robbery with a dangerous weapon, 55 to 75 months for conspiracy to commit robbery with a dangerous weapon, and 27 to 33 months for possession of a firearm by a felon. The trial court ordered all sentences imposed to be served consecutively. Defendant appeals.

_____

On appeal, defendant raises the following issues: whether the trial court erred in (I) allowing an in-court identification of a co-defendant; (II) admitting evidence of other crimes; and (III) failing to grant defendant's motion to dismiss the charge of possession of a firearm by a felon.

*I*

Defendant argues that the trial court erred to his prejudice by admitting evidence identifying Howie as the man who shot DMV owners Robbie and Crystal Jordan. We disagree.

Pursuant to North Carolina General Statutes, section 8C-1, Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2013).

> While all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial. The meaning of "unfair prejudice" in the context of Rule 403 is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.

*State v. Rainey*, 198 N.C. App. 427, 433, 680 S.E.2d 760, 766 (2009) (citations and quotations omitted).

"Whether or not to exclude evidence under Rule 403 is within the discretion of the trial court and will not be overturned absent an abuse of discretion." *State v. Underwood*, 134 N.C. App. 533, 538, 518 S.E.2d 231, 237 (1999) (citing *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it

could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527 (citation omitted).

At trial, Robbie Jordan testified that up until the time the shooting occurred, 1 November 2010 had been a normal business day. The couple prepared to leave the DMV station sometime between 5:00 and 5:30 p.m. Crystal Jordan looked out the building door and set the business alarm. She and Robbie then walked out into the parking lot. When Crystal reached her car, a man who had been standing next to the business approached and demanded the bank deposit bag she was holding. Robbie testified that "I think I recall him saying give me the bag, and he just went to shooting."

> [H]e shot her and she went down on the ground, and then he shot her three more times after she was on the ground. And then he turned on me.
>
> . . .
>
> He got everything, started up the hill towards -- there's a nightclub up there. He started up towards the nightclub and got about halfway, maybe not even halfway, turned around and looked at me to see if I had ever went down, and that's when I got a good look at him before -- I mean that's when I got a good look at him.

Subsequent to this testimony, the prosecution presented, over defendant's objection, State's exhibit 20—Otis Howie, Jr.

Howie did not testify, but Robbie Jordan identified Howie as the man who shot both him and his wife.

> Q    Do you recognize the individual that just walked in the courtroom?
>
> [Robbie Jordan:]    I do.
>
> Q    Could you tell the jury who that is?
>
> A    That's Otis Howie.
>
> Q    And is that the same Otis Howie that you referred to earlier?
>
> A    It is. He's the one that shot me and my wife.

Defendant argues that the production of Howie prejudiced him because "Howie was presented as a dangerous convicted felon. . . . The State presented Mr. Howie and [defendant] as part of the same pack and that [defendant] was responsible for the dangerous Mr. Howie's acts."[2]

Defendant was prosecuted under a theory of acting-in-concert with Howie.  It was incumbent upon the State to prove that defendant acted together with another person.  Because, Robbie saw Howie after Howie shot Crystal, it was proper to have Robbie identify Howie.  We note that prior to allowing the in-

---

[2] The record reflects that Otis Howie, Jr., was tried separately for his role in the shooting and robbery of Robbie and Crystal Jordan.

court identification of Howie, the trial court heard the arguments from both the prosecution and defense and made a deliberate decision to allow the in-court identification after weighing the probative value of the in-court identification with the possibility of prejudice to defendant.[3]

As with most evidence offered against a party, there is some prejudicial effect. *See Reis v. Hoots*, 131 N.C. App. 721, 729, 509 S.E.2d 198, 204 (1998) ("The question is whether the evidence is unduly prejudicial."). However, we reject the notion the State's presentation of Howie along with Robbie's identification of Howie as the person who shot both Robbie and Crystal leads to undue prejudice. *Rainey*, 198 N.C. App. at 433, 680 S.E.2d at 766. Other evidence showed that defendant was with Howie on the afternoon of the shooting, and actively assisted Howie in the commission of the crimes. The value of the identification evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* N.C. Evid. Rule 403. Therefore, we hold the trial court did not abuse its discretion in admitting

---

[3] Notwithstanding that Howie was in a prison uniform and shackled when he appeared, we note that his appearance in court was very brief, he did not speak, and that his attorney was present.

the in-court identification of Howie. Accordingly, we overrule defendant's argument.

*II*

Next, defendant argues that the robbery of a cash business is not an unusual enough occurrence to satisfy the requirements for admission of prior wrongs or bad acts pursuant to Rule 404(b). Specifically, defendant contends that the admission of evidence surrounding the robbery of two DMV license plate agencies in Charlotte in 2007 and 2010 as Rule 404(b) evidence was improper because the only similarity between these robberies was that each happened outside of a DMV office. We disagree.

Pursuant to Rule 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2013).

Prior to trial, defendant filed a motion to exclude evidence of any previous robberies defendant allegedly committed. During the hearing on defendant's motion to suppress, the trial court heard voir dire testimony from witnesses as to defendant's involvement in two prior robberies

occurring in Charlotte on 24 September 2007 and 8 October 2010, as well as testimony from Kenneth Meaders—a co-defendant in the 2010 robbery. At the conclusion of the hearing, the trial court reasoned that the evidence presented met the purpose of showing a common scheme or plan, that the prior two robberies were conducted in such a way as to be sufficiently similar to the current robbery, and that the dates on which the prior robberies occurred—24 September 2007 and 8 October 2010—were within temporal proximity to the 1 November 2010 robbery. The court further determined that the admission of such evidence would survive a Rule 403 balancing test. Following the admission of evidence regarding the two prior robberies, the trial court provided the jury with a limiting instruction informing them that "the [404(b)] evidence was received solely for the purpose of showing that there existed in the mind of the defendant a plan, scheme, system or design involving the crime charged in this case."

Again, here on appeal, defendant challenges the conclusion that the robberies occurring 24 September 2007 and 8 October 2010 were sufficiently similar to the robbery occurring 1 November 2010 to be admissible as evidence pursuant to Rule 404(b).

"Our Rules of Evidence require that in order for the prior crime to be admissible, it must be relevant to the currently alleged crime." *State v. Carpenter*, 361 N.C. 382, 388, 646 S.E.2d 105, 110 (2007) (citations omitted).

> [A]s to the "similarity" component, evidence of a prior bad act must constitute substantial evidence tending to support a reasonable finding by the jury that the defendant committed a similar act. Under Rule 404(b) a prior act or crime is 'similar' if there are some unusual facts present in both crimes.

*Id.* at 388, 646 S.E.2d at 110 (citations and quotations omitted).

With regard to the robberies occurring 24 September 2007 and 8 October and 1 November 2010, instead of detailing the events as recounted on the record, we summarize the salient points for Rule 404(b) analysis. Each of the prior robberies occurred outside of a DMV office. On each occasion, the victim observed a firearm, usually a handgun used by the assailant. The timing of the robberies was always after the close of business between 5:30 and 6:00 p.m. In each case, the assailant approached the DMV's female business owner as she crossed a parking lot while the owner was carrying the day's receipts, including a large amount of cash. After taking the deposit bag or attaché in which the money was being carried, the assailant

exited the vicinity by a vehicle driven by another person. The trial court found, and we agree, that present in each robbery on 24 September 2007 and 8 October 2010 are unusual facts that are sufficiently similar to the robbery occurring 1 November 2010 to satisfy the similarity component of Rule 404(b). *See id.* Therefore, we affirm the trial court's admission of the 404(b) evidence. Accordingly, defendant's argument is overruled.

*III*

Defendant argues that his convictions for possession of a firearm by a felon must be vacated because the evidence was insufficient that defendant was the perpetrator. Specifically, defendant contends that because the name on the judgment and commitment form submitted to establish defendant's prior felony conviction did not reflect defendant's name, the trial court erred in failing to grant his motion to dismiss the charge of possession of a firearm by a felon. We disagree.

> Our Supreme Court set forth the standard for when a trial court should properly deny a motion to dismiss for insufficient evidence:

> [T]he trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable

> mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. Any contradictions or discrepancies in the evidence are for the jury to resolve and do not warrant dismissal.
>
> Under this standard, we affirm the denial of a motion to dismiss for insufficient evidence if the record discloses substantial evidence of each essential element constituting the offense for which the accused was tried.

*State v. Davis*, 198 N.C. App. 146, 150—51, 678 S.E.2d 709, 713 (2009) (citations and quotations omitted).

Pursuant to North Carolina General Statutes, section 14-415.1, "[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm . . . ." N.C. Gen. Stat. § 14-415.1(a) (2013). "In order to obtain a conviction for possession of a firearm by a felon, the State must establish that (1) the defendant has been convicted of or pled guilty to a felony and (2) the defendant, subsequent to the conviction or guilty [plea], possessed a firearm." *State v. Taylor*, 203 N.C. App. 448, 458, 691 S.E.2d 755, 764 (2010) (citations omitted).

We note that defendant is correct: the name on the judgment and commitment form was not defendant's name and standing alone the form would not support defendant's conviction for possession of a firearm by a felon. However, there was additional evidence to support defendant's prior felony conviction. The State admitted into evidence and published to the jury a video of defendant's interview with Monroe Police Detective Glen Jenkins on 10 November 2010. Defendant was asked "what kind of trouble have you been in before?" to which defendant responded, "When I was nineteen years old, I caught an armed robbery." Later, Detective Jenkins asked defendant, "Do you own any firearms?"; defendant responded, "Man, I'm a convicted felon." The State also proffered a warrant for arrest issued 18 February 1997 by a Mecklenburg County Magistrate, charging Melvin Lee Luckey, born 5 August 1977, with robbery with a dangerous weapon, a felony. The State presented an indictment issued against Melvin Lee Luckey on 10 March 1997 for the felony charge of robbery with a dangerous weapon. The State also presented a Transcript of Plea form reflecting Melvin Lee Luckey's proffer of a guilty plea to two counts of felony robbery with a dangerous weapon.

We find this to be substantial evidence of the requirement that defendant pled guilty to and was convicted of a felony

prior to possessing a firearm in relation to the 1 November 2010 armed robbery. Therefore, we affirm the trial court's denial of defendant's motion to dismiss for insufficient evidence of the existence of a prior felony conviction by defendant. Defendant's argument is overruled.

No error.

Chief Judge McGEE and Judge STROUD concur.

Report per Rule 30(e).