IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-663

Filed 07 March 2023

Wake County, No. 19 CRS 203205

STATE OF NORTH CAROLINA

v.

MICHAEL BUCHANAN, Defendant.

Appeal by Defendant from judgment entered 3 December 2021 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 24 January 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Michael T. Henry, for the State-Appellee.*

*Dysart Willis, P.L.L.C., by Drew Nelson, for Defendant-Appellant.*

STADING, Judge.

Michael Buchanan ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of one count of involuntary manslaughter. For the reasons set forth below, we hold no error.

## I.   Procedural History

Defendant was indicted on one count of first-degree murder on 11 March 2019. Initially, Defendant was tried during the 12 April 2021 Criminal Session of Wake County Superior Court. Defendant filed a pretrial motion *in limine* "to prevent the

State from introducing . . . any evidence of other crimes, wrongs, or acts allegedly committed by Defendant." The trial court denied Defendant's motion.

On the fifth day of the initial trial, evidence extracted from a cell phone was located and produced by the State. The trial court determined the late production of evidence was not due to misconduct by the State but nonetheless would prejudice Defendant's ongoing trial. Accordingly, the judge declared a mistrial. A retrial was held during the 29 November 2021 Criminal Session of Wake County Superior Court. The same trial court judge, prosecutor, and defense counsel were present for Defendant's retrial. Defendant renewed his objections made pursuant to the pretrial motion argued at the 12 April 2021 Criminal Session of Wake County Superior Court. Consistent with the ruling made prior to the initial trial, the judge once again denied Defendant's motion. On 3 December 2021, a jury found Defendant guilty of involuntary manslaughter. The trial court entered judgment sentencing Defendant to 16 to 29 months imprisonment. Defendant entered notice of appeal.

## II.    Factual Background

At trial, relevant evidence tended to show Defendant began dating Marquise McCall ("McCall") in Maryland in early 2018. On 2 February 2019, Defendant moved into McCall's residence in Raleigh, North Carolina. McCall had five children, all under the age of twelve years old. McCall's youngest child, T.A.,[1] was twenty-two

---

[1] We use pseudonyms to protect the identity of the minor child in this case. *See* N.C. R. App. P. 42(b).

months old. Defendant and McCall had a verbal disagreement over discipline which ended their relationship on 13 February 2019. This dispute led to a decision that Defendant would leave McCall's residence in North Carolina and return to Maryland at the end of the week.

Just before Defendant was to leave, McCall had a job interview on 14 February 2019. She left her three youngest children in the exclusive care of Defendant. When McCall left, T.A. did not have any visible injuries on his body. At the conclusion of the job interview, McCall turned on her phone and received a text message from Defendant requesting she contact him. McCall called Defendant who stated T.A. had "a bad diaper rash" after soiling his diaper but otherwise did not indicate anything was out of the ordinary. Just moments later, McCall received a FaceTime call from Defendant yelling that she needed to "[g]et home now." Defendant informed McCall that T.A. was "not breathing," and she could see on her phone that his eyes "weren't open, but they weren't closed and his mouth was open."

Immediately thereafter, McCall ended the FaceTime call, contacted 911, rushed home, and arrived contemporaneously with the paramedics. T.A. looked "like a doll, totally not moving, flaccid." Defendant stated to the paramedics that T.A. had "choked on a waffle." However, contrary to Defendant's claim, the paramedics found nothing blocking the child's airway.

Intubation was not effective as would be expected had T.A. choked on something. Therefore, the treating physician ordered a computerized tomography

("CT") scan to see if there was another reason he was not breathing. The CT scan results showed T.A. sustained a skull fracture and subdural hematomas on both sides of his brain. In the opinion of T.A.'s treating physician, these injuries were "inflicted on him" and indicative of "non-accidental trauma or child abuse." He was declared brain dead on 16 February 2019, and died thereafter. The medical examiner opined that the cause of death was "blunt force injury of the head" and the manner of death was "homicide." Hospital staff informed law enforcement of their findings.

### III. The Trial Court's Ruling on Defendant's Motion

Prior to the initial trial, the State filed a notice of intent to introduce 404(b) evidence against Defendant at trial. More specifically, the State gave notice of intent to use "incidents of prior acts of child abuse against Ms. McCall's minor children." In response, Defendant moved the trial court to "prevent the State from introducing, at trial, any evidence of other crimes, wrongs, or acts allegedly committed by Defendant" pursuant to Rules of Evidence 403 and 404.

During the presentation of evidence for the motion, McCall first testified to an incident from November 2018 in which she learned from two sources that Defendant punched her then four-year-old son in the chest. Next, McCall recounted that she personally heard Defendant "beat" her daughter with a belt a day or two before T.A. was fatally injured. Not long thereafter, another incident occurred in McCall's presence whereby Defendant "snatched" a videogame system out of the wall after he became angry with one of the children. Defendant lived with McCall and her minor

children in North Carolina for a total of two weeks when the last two instances of conduct occurred, as well as the fatal injury sustained by T.A.

At the conclusion of the motion, including sworn testimony elicited from McCall followed by arguments of counsel, the trial court found there was "substantial evidence" Defendant committed the three acts of discipline. Additionally, the judge determined these instances of discipline were "substantially similar" to the acts alleged that resulted in injury and the untimely death of T.A. With respect to temporal proximity, the trial court noted that the conduct occurred within a maximum timeline of "three or four months." Moreover, the judge concluded that the instances of conduct were "probative of the intent of the [D]efendant, the motive of the [D]efendant, the absence of mistake or accident, and malice of the [D]efendant." Therefore, the trial court found the three disciplinary acts admissible under Rule 404(b).

Next, the trial court weighed the probative value of the evidence relative to the prejudicial effect pursuant to Rule 403 and found the evidence was "not unduly prejudicial." Accordingly, the judge found "each of these instances" were admissible. Nevertheless, a limiting instruction was provided to the jury that these three incidents were to be considered only for the purpose of showing that Defendant "had the intent which is a necessary element of the crime charged in this case," or "had the malice . . . ; the absence of mistake; and the absence of accident."

## IV. Analysis

Defendant argues that the trial court erred in failing to exclude the evidence of prior acts of discipline under Rule 403. In the alternative, Defendant requests the trial court's determinations be reviewed for plain error in the event the issue appealed was not properly preserved at trial. However, this alternative inquiry is not necessary as the issue was properly preserved for appeal pursuant to Rule 10 of the North Carolina Rules of Appellate Procedure. Defendant does not dispute the trial court's findings of fact or conclusions of law pursuant to Rule 404(b).

The appropriate standard of review concerning a trial court's balancing of probative value and unfair prejudice under Rule 403 is abuse of discretion. *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008). "Abuse of discretion occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." *State v. Syriani*, 333 N.C. 350, 379, 428 S.E.2d 118, 133, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341, 114 S. Ct. 392 (1993). Reversal is appropriate only if the trial judge's ruling was "outside the bounds of reason." *State v. Peterson*, 361 N.C. 587, 603, 652 S.E.2d 216, 227 (2007).

Defendant argues that the three instances of conduct offered little probative value to the State's theory that T.A.'s death was not accidental. Here, a review of the record reveals that the trial court heard evidence from a witness outside of the presence of the jury and decided that two of the prior acts involved "striking" and the third was "indicative of a temper." The judge went on to note that this behavior was consistent with Defendant's statement to McCall that if she would discipline the

children, then he "wouldn't have to." The trial court further considered the temporal proximity of all relevant acts. Specifically, the judge found the conduct was "probative of the intent . . . , the motive . . . , the absence of mistake or accident, and malice of . . . [D]efendant."

Defendant maintains that admission of the specific instances of conduct was "highly prejudicial" and the "verbs chosen by the witness" illustrate the "prejudicial nature of this testimony." Pursuant to Rule 403, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2019). "Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the defendant; the question, then, is one of degree." *State v. Mercer*, 317 N.C. 87, 93-94, 343 S.E.2d 885, 889 (1986). It is well settled that "[w]hile all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial." *State v. Rainey*, 198 N.C. App. 427, 433, 680 S.E.2d 760, 766 (2009) (citations omitted). Rather, "[t]he meaning of 'unfair prejudice' in the context of Rule 403 is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *Id.* (quotation marks and citation omitted). "[T]o be excluded under Rule 403, the probative value of the evidence must not only be outweighed by the danger of unfair prejudice, it must be *substantially* outweighed."

*State v. Lyons*, 340 N.C. 646, 669, 459 S.E.2d 770, 783 (1995).

According to Defendant, "highly prejudicial testimony—that [Defendant] 'punched' and 'beat' other minor children—substantially outweighed the probative value of the evidence." Despite Defendant's disapproval of the "verbs chosen by the witness," McCall is merely recounting her personal observations and knowledge of Defendant's forceful actions toward her minor children. In the present case, a review of the record reveals that the trial court heard evidence of the acts of discipline outside the presence of the jury and then heard arguments from the attorneys. Thereafter, the judge conducted the proper balancing test required by Rule 403 to determine admissibility. Moreover, the trial court was aware of the potential danger of unfair prejudice to Defendant and exercised due diligence by instructing the jury of the limited purpose for which the evidence could be considered before hearing testimony on each instance of conduct. Additionally, when charging the jury, the judge gave a proper limiting instruction that the evidence of those instances of conduct could be considered "only for the limited purpose for which it has been received" and "not . . . for any other purpose."

## V.    Conclusion

In light of the support for the trial court's findings in the record, coupled with the deliberate and careful handling of the process, we conclude that it was not an abuse of discretion for the judge to determine that the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. Therefore, the trial

court's decision to overrule Defendant's objection and allow evidence of the prior acts of discipline was a proper exercise of the trial court's discretion and did not prejudice Defendant in the outcome of his case. We find that the trial court appropriately applied the balancing test and accordingly, we hold no error.

NO ERROR.

Judges GORE and RIGGS concur.