STATE OF NORTH CAROLINA v. JAMES HENRY WOODARD

No. 9012SC53

(Filed 7 May 1991)

1. **Rape and Allied Offenses § 4.1 (NCI3d) — cross-examination of defendant — defendant's adultery — not admissible before defendant's character testimony — harmless error**

   Defendant was not prejudiced by error in a prosecution for burglary, rape, and first degree sexual offense in allowing the prosecutor to cross-examine defendant about an adulterous affair and in requiring defendant to read love letters concerning the affair before defendant put character witnesses on the stand. Evidence of a person's character is not as a general rule admissible to prove that a person acted in conformity with that character, but is admissible if the accused offers evidence of a pertinent trait. Other testimony regarding the affair could be used because defendant had by then presented evidence that he was a law abiding citizen. Even the evidence erroneously admitted was harmless because there was no reasonable possibility of a different result at trial. N.C.G.S. § 8C-1, Rule 404(a)(1).

STATE v. WOODARD

[102 N.C. App. 687 (1991)]

Am Jur 2d, Rape § 65.

Admissibility of evidence of pertinent trait under Rule 404(a) of the Uniform Rules of Evidence. 56 ALR4th 402.

2. **Rape and Allied Offenses § 4 (NCI3d) — sexual aid — admitted — pornography — erroneously admitted — harmless error**

The trial court did not err in a prosecution for burglary, rape, and sexual offense by allowing the State to cross-examine defendant concerning a sexual aid found in his bedroom. Testimony from the victims indicated that their attacker had difficulty maintaining an erection and was a sexual deviant, while defendant was portrayed as a family man and minister who did not have problems with impotence. An inference by the jury that defendant "James Woodard" owned or used the sexual aid found in his home would directly contradict defendant's theory that James Woodard was a personality separate and distinct from "Johnny Gustud." Although the court erred in admitting pornographic videos and magazines also found in defendant's home, this error was harmless.

Am Jur 2d, Rape § 65.

Admissibility of evidence of pertinent trait under Rule 404(a) of the Uniform Rules of Evidence. 56 ALR4th 402.

3. **Criminal Law § 97.2 (NCI3d) — multiple personalities — emergence of alternate personality — court's refusal to reopen evidence**

The trial court did not err in a prosecution for burglary, rape, and first degree sexual offense by refusing to reopen the evidence when defendant's alleged alter personality appeared during the charge conference and informed the court that he wanted to testify. Defense witnesses had testified that they were capable of bringing out the other personality, and defense counsel admitted that they had made the tactical decision not to elicit testimony from the alternate personality. Whether to reopen the evidence was within the discretion of the trial court and the court did not abuse its discretion.

Am Jur 2d, Trial § 158.

STATE v. WOODARD

[102 N.C. App. 687 (1991)]

4. **Criminal Law §§ 355, 365 (NCI4th)— multiple personalities— emergence of alternate personality—refusal to remove defendant—no error**

The trial court did not err in a prosecution for burglary, rape and sexual offense by refusing to remove defendant from the courtroom when his alleged alter personality emerged. Defendant was no longer disruptive once he was shackled and the court could not instruct the jury, as defendant requested, that the person sitting at the defense table was not defendant. The court in so doing would have expressed an opinion on whether defendant in fact had multiple personalities.

**Am Jur 2d, Trial § 39.**

5. **Constitutional Law § 342 (NCI4th)— multiple personalities— emergence of alternate personality—defendant's presence**

The trial court did not err in a prosecution for burglary, rape and sexual offense by continuing the trial after defendant's alternate personality emerged, even though defendant contended that he was no longer present.

**Am Jur 2d, Trial § 1103.**

6. **Criminal Law § 863 (NCI4th)— unconsciousness defense— instruction on involuntary commitment—denied—no error**

The trial court did not err in a prosecution for burglary, rape and sexual offense by refusing to instruct the jury that defendant would be subject to a civil commitment proceeding if found not guilty because of unconsciousness based on a mental disorder. Whether or not defendant would have been subject to involuntary commitment proceedings was pure speculation.

**Am Jur 2d, Trial §§ 573 et seq.**

7. **Criminal Law § 773 (NCI4th)— multiple personalities—defense of unconsciousness—instructions—burden of persuasion**

The trial court did not err in a prosecution for burglary, rape, and sexual offense by instructing the jury that the burden of persuasion was on defendant to show that he was unconscious at the time of the commission of the crimes. Unconsciousness is an affirmative defense and the burden is on defendant to prove its existence to the satisfaction of the jury.

**Am Jur 2d, Trial § 742.**

**Modern status of rules as to burden and sufficiency of proof of mental irresponsibility in criminal case. 17 ALR3d 146.**

8. **Criminal Law § 50.2 (NCI3d) — multiple personalities — sleeping defendant — lay opinion of police officer — admissible**

The trial court did not err in a prosecution for burglary, rape and sexual offense in which defendant claimed to have multiple personalities by admitting the testimony of an officer that defendant "pretended" to be asleep and awoke as a different personality. Lay opinions are allowed when they are rationally based on the perception of the witness and are helpful to a clear understanding of the testimony or the determination of the fact in issue. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Rape § 100.**

9. **Rape and Allied Offenses § 6.1 (NCI3d) — first degree rape and sexual offense — unloaded gun — no instruction on lesser offense**

The trial court did not err in a prosecution for first degree rape and first degree sexual offense by not instructing the jury on second degree rape and second degree sexual offense based on the gun not being loaded. An unloaded gun used in the commission of rape to threaten the victim into submission is an article which the other person reasonably believes to be a dangerous or deadly weapon and is sufficient to meet the definition of first degree rape. Although defendant attempted to argue on appeal the new theory that there was insufficient evidence that a deadly weapon was used, the defendant may not change his position from that taken at trial. N.C.G.S. § 14-27.2(a)(2)a, N. C. Rules of App. Procedure, Rule 10(b)(1).

**Am Jur 2d, Rape § 110.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

10. **Rape and Allied Offenses § 6 (NCI3d) — rape and sexual offense — instructions — multiple offenses**

The trial court did not err by instructing the jury on two counts of first degree sexual offense for each of four

victims where there was no basis on which the jury could have found defendant guilty of one continuing sex offense.

**Am Jur 2d, Rape § 108.**

**11. Rape and Allied Offenses § 7 (NCI3d)— rape and sexual offenses—two consecutive life sentences—not cruel and unusual**

The imposition of two consecutive life sentences was not cruel and unusual punishment where defendant was convicted of four first degree burglaries, three first degree rapes, and eight first degree sexual offenses.

**Am Jur 2d, Rape §§ 114, 115.**

**Comment Note.—Length of sentence as violation of constitutional provisions prohibiting cruel and unusual punishment. 33 ALR3d 335.**

APPEAL by defendant from a judgment entered 20 July 1989 by *Judge Darius B. Herring, Jr.* in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 22 January 1991.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General G. Lawrence Reeves, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for the defendant.*

LEWIS, Judge.

Defendant was indicted on 15 February 1988 for four counts of first degree burglary, four counts of first degree rape, and eight counts of first degree sexual offense. Defendant was convicted of all charges and sentenced to two consecutive life sentences. Defendant appeals.

I. Evidence of Defendant Woodard's Sexual Habits

[1] Defendant first assigns as error the denial of his motion in limine to restrict the State's cross-examination of the defendant regarding an adulterous relationship he had with Ms. Thompson. On cross-examination, the defendant admitted that he knew Ms. Thompson, but denied ever having any sort of sexual relationship with her. The State then submitted to the defendant several "love" letters which impeached the defendant's prior denial of involvement with Ms. Thompson in an affair. The defendant denied any knowledge

of the letters which were found in his desk drawer at his office, but nonetheless was required to read them to the jury. The defendant cites Rule 608(b) which restricts cross-examination using prior acts of misconduct to those acts which relate to truthfulness or untruthfulness. N.C.G.S. § 8C-1, Rule 608. We agree. Rule 608(b) limits the State in its inquiry to types of the defendant's misconduct, which involve truthfulness or untruthfulness. We note that Rule 608(b) does not allow the use of extrinsic evidence concerning that misconduct to impeach a witness. Adultery is not the type of misconduct which falls under Rule 608(b). *See State v. Morgan,* 315 N.C. 626, 634, 340 S.E.2d 84, 90 (1986).

The prosecution cross-examined the defendant concerning his affair before the defendant put character witnesses on the stand to testify as to his law-abidingness. The trial court erred in allowing the prosecution to ask the defendant about his adultery before the defendant put his witness on the stand. N.C.G.S. § 1C-1, Rule 404(a)(1) states that as a general rule evidence of a person's character is not admissible to prove that a person acted in conformity with that character. However, evidence of a person's character is admissible if the accused offers evidence of a pertinent trait or the prosecution offers evidence to rebut the same. N.C.G.S. § 8C, Rule 404(a)(1).

Here, it was only proper for the prosecution to refer to the defendant's illegal adulterous affair in order to rebut the defendant's contention that James Woodard was a law-abiding citizen. Therefore, we find that the trial court erred in allowing the prosecution to cross-examine the defendant concerning the adulterous affair and to require the defendant to read the "love" letters concerning the affair on cross-examination. Defendant also contends that the trial court erred in allowing Ms. Thompson to testify regarding the affair. Here, the evidence could be used because by then the defendant had presented evidence that James Woodard was a law-abiding citizen. N.C.G.S. § 1C-1, 404(a)(1).

As to the evidence of the adulterous relationship which the court admitted, we hold that the error is harmless and that there is no "reasonable possibility that, had the error[s] in question not been committed, a different result would have been reached at trial." N.C.G.S. § 15A-1443(a).

[2] The defendant further objected to the questions posed by the State on cross-examination regarding the presence of "Sta-hard"

cream and pornographic videos and magazines found in the defend-
ant's bedroom. Testimony of the victims indicated that their at-
tacker had difficulty maintaining an erection during the rapes and
that the "Johnny Gustud" personality (who supposedly committed
the crimes) was a sexual deviant who said he only wanted to make
the women he raped "feel good." This character was contrasted
to that of James Woodard, who was portrayed as a family man
and minister and testified that he did not have problems with
impotence.

We hold that the State's inquiry into the defendant's (James
Woodard's) use of the "Sta-hard" cream was a proper area for
cross-examination to allow the jury to infer, if it chose to, that
the defendant did not suffer from a multiple personality disorder.
The cream was found in the defendant's home where he, as James
Woodard, lived with his wife free of any problems of impotence.
If the jury inferred that "James Woodard" owned or used the
cream found in his home, this would directly contradict the defend-
ant's theory that James Woodard was a personality separate and
distinct from that of Johnny Gustud. The evidence tends to show
that Woodard and "Gustud" were not separate personalities but
one and the same and Woodard was conscious at the time the
crimes were committed and that he was aware of his actions. We
find no error as to the admission of the evidence of the cream.

We find that the court erred in admitting the evidence of
the pornographic videos and magazines found in the defendant's
home. We hold that this error, however, was harmless and would
not create a reasonable possibility that the jury would have reached
a different result at trial. N.C.G.S. § 15A-1443(a).

II. Problems Arising from the "Appearance" of an Alter
Personality at the Close of All of the Evidence.

[3] Defendant next argues that the court "erred in not protecting
defendant from prejudice arising out of the conduct of Johnny
Gustud." During the charge conference, "Johnny Gustud" made
his first "appearance" in the courtroom. Defense counsel made a
motion to re-open the evidence in order to allow "Johnny Gustud"
to testify. He informed the court that "he" wanted to testify and
that this testimony would tend to exculpate the defendant James
Woodard. The court refused to re-open the case. At this point,
"Johnny Gustud" became very disruptive and eventually had to
be taken out of the courtroom and shackled. Defendant now con-

tends that he is entitled to a new trial (1) because the trial court did not re-open the evidence to allow "Gustud" to testify; (2) because the trial court denied the defendant's motion to remove "Gustud" from the courtroom; and (3) because the trial court finished the trial without waiting for "Gustud" to resume the personality of James Woodard. We will address each of these exceptions in turn.

First, we do not find that the trial court erred in refusing to re-open the evidence to allow "Gustud" to testify. Whether or not to re-open the evidence in a case is a matter within the sound discretion of the trial court. *State v. Mutakbbic*, 317 N.C. 264, 273, 345 S.E.2d 154, 158 (1986). Defense counsel admitted that they had made a tactical decision not to elicit testimony from the "Gustud" personality during its case-in-chief because they feared that it might appear to the jury as a "Hollywood ploy." In fact, the defendant's own witnesses testified that they were capable of "calling out" the "Gustud" personality. The defense attorneys chose not to do this during the trial, and the trial court did not abuse its discretion in refusing to re-open the evidence when "Gustud" appeared.

[4] Likewise, we do not find that the trial court erred in refusing to remove the defendant from the courtroom. The transcript reveals that once he was shackled, the defendant was no longer disruptive. The trial court also could not, as the defense requested, instruct the jury that the person sitting at the defense table was not James Woodard, but instead was Johnny Gustud. If the judge had done so, he would have impermissibly expressed his opinion as to whether the defendant in fact had multiple personalities. We find no error.

[5] Third, the defendant argues that the court should not have continued the trial without his being "present." The "Gustud" personality made it very clear that unless he was allowed to testify, he would not allow the defendant "to come back." We find that under these circumstances, the trial court did not err in proceeding with the trial. There was only one person accused of rape. We find the defendant's presence in the courtroom sufficient. The trial court did not err in proceeding with the trial.

III. Refusal by the Trial Court to Instruct on Involuntary Commitment Proceedings if the Defendant was found Not Guilty.

[6] In his next assignment of error the defendant argues that the trial court erred in refusing to instruct the jury that if they found him not guilty because of unconsciousness based on a mental

disorder, he would be subject to a civil commitment proceeding. The defendant cites no statutory or case law requiring him to instruct the jury about the possibility of the defendant being subjected to involuntary commitment proceedings. In fact, the judge indicated that he was not certain what he would do if the jury returned a verdict finding the defendant not guilty by reason of unconsciousness. Whether the defendant would have been subject to involuntary commitment proceedings at that point was pure speculation. We reject this assignment of error.

### IV. Placing the Burden of Persuasion on the Defendant regarding the Question of Unconsciousness.

[7] Defendant contends that the trial court erred in instructing the jury that the burden of persuasion was on the defendant to show that he was unconscious at the time of the commission of the crimes. The trial court gave the following instruction to the jury:

> If the defendant was unable to act voluntarily at the times in question, he would not be guilty of any offense. As to the defense of unconsciousness, or automatism, the burden rests upon the defendant, James Henry Woodard, to establish this defense, not beyond a reasonable doubt, but merely to the satisfaction of the jury.

"Unconsciousness is an affirmative defense and the burden is on the defendant to prove its existence to the satisfaction of the jury." *State v. Jerrett*, 309 N.C. 239, 265, 307 S.E.2d 339, 353 (1983); *State v. Caddell*, 287 N.C. 266, 290, 215 S.E.2d 348, 370 (1975). We reject this assignment of error.

### V. Testimony that the Defendant "Pretended" to be Asleep.

[8] The defendant excepts to the testimony of Lieutenant Binder, a witness for the State, that while driving "Johnny Gustud" to possible crime scenes, the defendant "pretended" to be asleep and then woke up as "James Woodard." The defendant contends that testimony by Lt. Binder that the defendant "pretended" is an inadmissible opinion and that the trial court erred in overruling the objection. We disagree. N.C.G.S. § 8C-1, Rule 701 allows lay opinions when they are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of the fact in issue." We find that Lt. Binder's opinion that the defendant "pretended" to be asleep in the patrol car meets the criterion set forth above. We find no error.

VI. Failure of the Trial Court to Instruct on Second Degree
Rape and Second Degree Sexual Offense.

[9] Defendant argues that with regard to one of the victims in
the case, the trial court erred in failing to instruct the jury on
the offenses of second degree rape and second degree sexual of-
fense, on the grounds that an unloaded gun is not a "deadly weapon."
On appeal, the defense adopts a new theory, arguing that there
was insufficient evidence that a deadly weapon was used because
the victim only testified that she heard a "clicking" noise which
could have been a knife or a gun. Rule of Appellate Procedure
10(b)(1) requires that in order to preserve a question for appellate
review, the party must state the specific grounds for the ruling
the party desires the court to make. N.C.R. App. P. 10(b)(1). Here,
counsel stated to the court that he was objecting to the denial
of its request for an instruction on second degree rape and second
degree sexual offense because he did not believe that an unloaded
gun was a "deadly weapon." The defendant may not change his
position from that taken at trial to obtain a "steadier mount" on
appeal. State v. Benson, 323 N.C. 318, 322, 372 S.E.2d 517, 519
(1988). Defendant never objected or gave any indication that the
basis for the request was because the jury could find that the
defendant did not use any weapon in the commission of the rape.
"The theory upon which a case is tried in the lower court must
control in construing the record and determining the validity of
the exceptions." State v. Hunter, 305 N.C. 106, 112, 286 S.E.2d
535, 539 (1982). A gun which is used in the commission of rape
to threaten the victim into submission, if not known to be unloaded,
is an "article which the other person reasonably believes to be
a dangerous or deadly weapon" and is sufficient to meet the defini-
tion of first degree rape. N.C.G.S. § 14-27.2(a)(2)a; See State v.
McKinnon, 306 N.C. 288, 293 S.E.2d 118 (1988). We find no merit
to this assignment of error.

VII. Entry of Two Counts of Sexual Offense as to Each Victim

[10] Each of the four victims testified that the defendant per-
formed cunnilingus on them. For each of the four victims, the
trial court instructed the jury on two counts of first degree sexual
offense. The defendant appeals because the trial court did not in-
struct in such a way as to make it clear which of the two alleged
sex acts went with the indictment. After reviewing the transcripts
we find that there is no basis upon which the jury could have

found the defendant guilty of one continuing sex offense. Each of the victims testified to at least two separate sex offenses. We reject this assignment of error.

## VIII. Imposition of Two Consecutive Life Sentences

[11] The defendant contends that the imposition of two consecutive life sentences in this case constitutes cruel and unusual punishment in violation of our State and Federal Constitutions. We disagree. The defendant was convicted of four first-degree burglaries, three first-degree rapes, and eight first-degree sexual offenses. The sentence imposed is authorized under the statutes. We find that the sentence imposed is not disproportionate to the crimes committed.

## IX. Conclusion

For the reasons stated above, we find that the defendant received a fair trial, free of prejudicial error.

No prejudicial error.

Judges ARNOLD and JOHNSON concur.