An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1116

Filed 5 November 2025

Johnston County, Nos. 22CR000795-500, 22CR000796-500

STATE OF NORTH CAROLINA

v.

RICHARD DARNELL JAMES, Defendant.

Appeal by defendant from judgment entered 25 August 2023 by Judge Craig Croom in Johnston County Superior Court. Heard in the Court of Appeals 23 September 2025.

> *Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.*

> *Attorney General Jeff N. Jackson, by Assistant Attorney General Catherine R. Laney, for the State.*

FLOOD, Judge.

Defendant Richard Darnell James appeals from the trial court's judgment finding him guilty of felony assault, assault on a female, and being a habitual felon. On appeal, Defendant argues the trial court: first, plainly erred in allowing a witness to testify regarding a statement a hotel guest said to her; second, abused its discretion

by denying Defendant's motion to reopen evidence; and third, erred in increasing Defendant's sentence after he indicated he was going to appeal. Upon careful review, we conclude the trial court: first, did not plainly err in allowing the witness to testify about the statement the hotel guest made to the witness, where the statement was offered for a non-hearsay purpose; second, did not abuse its discretion in denying Defendant's motion to reopen evidence, where Defendant had the opportunity to illicit further testimony, but made the tactical decision not to; and third, did not err in increasing Defendant's sentence, where Defendant's sentence was within the presumptive range and Defendant failed to rebut the presumption of regularity.

## I. Factual and Procedural Background

In April of 2022, Latarshie Douglas and Defendant were in an intimate relationship. On the night of 22 April 2022, Douglas was "partying" with friends and family. Later that night, Desmond Richardson, Douglas's ex-fiancé, gave her a ride back to the Travelers Inn, where Douglas was staying. Before Douglas arrived, she called the hotel clerk to let Defendant into her room.

Once they arrived at the Travelers Inn, Douglas and Richardson entered the room and found Defendant sitting on the bed in the dark. Douglas asked Richardson to leave so she could speak with Defendant alone. As Douglas was closing the door behind Richardson, she began explaining to Defendant she needed time to think about whether she wanted to continue seeing him. She then asked Defendant to leave the room and sat on the bed facing away from him. Defendant "said okay[,]" "grabbed

one object out of the room, opened the door, and [left] the room[.]" When Defendant left the room, he left the door open, and after a brief moment, he came back into the room.

At trial, Douglas testified that when Defendant came back into the room, she "still had [her] back to him" when she was suddenly hit with pressure. She explained that in the moment "the only thing [she could] do was just shield [her] face. . . [a]nd ball up on the bed in a fetal position[,]" as Defendant continued to hit her. Once Defendant left the room again, Douglas "proceeded to get up[,]" and go "to the door of the hotel room," where she saw "the front desk lady" coming down the sidewalk. According to Douglas, "the front desk lady" asked her if she wanted her to call the police and Douglas responded, "yes, please call the police." Defendant, who was by the door, then "grab[bed Douglas] by the top of [her] hair. Grabbing [her] back inside the motel room . . . and . . . continue[d] to swing and hit, and try to hit [her]."

Charlotte Smith, who was working the "4:00 p.m. to 1:00 a.m. shift" at the Travelers Inn, testified that around the same time as the above-described events, she received a phone call from the hotel guest next to the room that Douglas was staying in. During the phone call, the hotel guest told Smith, "there is some man beating the crap out of his lady." Smith then went to Douglas's room, knocked, and announced herself as "front desk." Defendant "jerked the door open," and although Smith could not see into the room, she told Defendant he was "going to have to leave [the] room." After Defendant told Smith that he would leave, Smith observed Defendant "pull his

arm back[,]" in such a way that made her feel like that "must be trouble." Smith "left right away[,]" "hit [her] palm on the" door of the neighboring room, told them to "call the police[,]" ran back to the front desk, and called law enforcement herself.

Just after midnight on 23 April 2022, Officer Moreno responded to a dispatch call that there was a domestic incident in progress at the Travelers Inn. When Officer Moreno arrived, he spoke with Douglas, photographed her injuries on the left and right side of her face, spoke with Smith, returned to Douglas to get some more information, "cleared the scene[,]" and then left. At approximately 3:40 a.m., Officer Moreno went back to the Travelers Inn in response to Douglas's report that her tires had been slashed. Later that morning, after receiving another report that Defendant was back on the property, Officer Moreno returned to the property for a third time, spoke with Defendant, and subsequently arrested him.

On 18 July 2022, a Johnston County Grand Jury indicted Defendant for felony assault pursuant to N.C.G.S. § 14-33.2, assault on a female, injury to personal property, and attaining the status of a habitual felon.

This matter came on for trial on 21 August 2023. During trial, Smith, Douglas, and Officer Moreno testified to the account above. At the close of the State's evidence, the State voluntarily dismissed the charge of injury to personal property. After the jury retired to deliberate, Defendant moved to reopen the case and introduce Officer Moreno's testimony about what he saw on the surveillance video. Defense counsel specifically argued that—after speaking with Officer Moreno that morning about

what he saw on the video—Officer Moreno's additional testimony would be exculpatory.

In considering whether the evidence would be exculpatory, the trial court acknowledged that while there was testimony that Defendant drew his arm back, "[t]here was no evidence about anything being on video that [] shows [Defendant] actually hitting the victim in this case[.]" The trial court further explained that,

> [t]here were opportunities for . . . [D]efendant to address this during either cross-examination or by putting on evidence. Even though they don't necessarily have to put on evidence. And this has been brought up at this point where we have had closing arguments. The jury has been charged. The jury has been deliberating for roughly 30 minutes, and we are now back from lunch. Based on all of those findings in my discretion I am not going to permit the party to introduce additional evidence at this time.

The trial court then denied Defendant's request to reopen the evidence but allowed Defendant to make an offer of proof—meaning Defendant presented the evidence outside of the jury's presence to preserve the issue for appeal.

On 24 August 2023, the jury returned verdicts finding Defendant guilty of felony assault and assault on a female. The next day, the jury returned a verdict finding Defendant guilty of being a habitual felon.

After dismissing the jury, the trial court proceeded to the sentencing hearing, where Douglas presented an impact statement. During Douglas's impact statement, Defendant interrupted her a number of times stating, among other things, that she was "lying" and believed he would "be home in two years on appeal." While the trial

judge was speaking to Defendant, Defendant stated, "I know you're going to give me the max, but I'll be home in two years. I'm going to win my appeal. I promise you that." The State then asked the court to sentence Defendant at the top of the presumptive range, and Defendant's counsel asked the court to sentence at the bottom of the mitigated range. As defense counsel and the trial court were discussing the mitigating factors, Defendant interjected several more comments. After Defendant made these remarks, the trial court commented, "I was at mitigated range on this[,]" and "forget it. I'm going to go—I'm going to go ahead—he said go ahead and do it." The trial court subsequently entered judgments upon the verdicts and sentenced Defendant to 111 to 146 months in prison.

Defendant gave oral notice of appeal in open court. On 28 August 2023, the trial court arrested its judgment for assault on a female because "it is the same behavior in 22CR000795-500 in which [] Defendant was also found guilty by the jury."

## II. **Jurisdiction**

This Court has jurisdiction to review this appeal from final judgments of a superior court, pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. **Analysis**

On appeal, Defendant argues the trial court: (A) prejudicially erred in admitting Charlotte Smith's testimony—regarding what the hotel guest in the neighboring room told Smith—because it was inadmissible hearsay; (B) abused its discretion in denying Defendant's motion to reopen the evidence; and (C) erred by

increasing Defendant's sentence from a mitigated sentence to the maximum

permissible sentence after Defendant indicated he was going to appeal. We address

each argument, in turn.

## A. Hearsay Evidence

Defendant first argues that Smith's testimony—referring to what she had been

told by the hotel guest in the room next to Douglas's room—constituted inadmissible

hearsay. We disagree.

Where evidence is admitted without objection, this Court reviews for plain

error. *State v. Gregory*, 342 N.C. 580, 584 (1996). To be entitled to plain error review,

the defendant must "specifically and distinctly" allege plain error. *State v. Dennison*,

359 N.C. 312, 313 (2005). Furthermore, the application of plain error review is limited

to "exceptional case[s] where, after reviewing the entire record, it can be said the

claimed error is a fundamental error, something so basic, so prejudicial, so lacking in

its elements that justice cannot have been done[.]" *State v. Odom*, 307 N.C. 655, 660

(1983) (citation modified). In order to successfully show that the trial court plainly

erred, the "defendant must convince this Court not only that there was error, but that

absent the error, the jury probably would have reached a different result." *State v.

Jordan*, 333 N.C. 431, 440 (1993) (citation omitted).

In his brief, Defendant conceded that he did not object to Smith's statements

at trial but argued the trial court plainly erred in admitting Smith's testimony as

substantive evidence without a limiting instruction. As such, we review the entire

Record to determine whether the trial court erred, and if the court did err, whether Defendant was prejudiced by the court's error. *See id.*

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (2023). "If a statement is offered for any other purpose, [however,] it is not [deemed as] hearsay and is admissible." *State v. Dickens*, 346 N.C. 26, 46 (1997). In particular, "statements of one person to another to explain subsequent actions taken by the person to whom the statements were made are admissible as non-hearsay evidence." *State v. Castaneda*, 215 N.C. App. 144, 147 (2011) (citing *State v. Coffey,* 326 N.C. 268, 282 (1990)). "The admission of evidence, competent for a restricted purpose, will not be held error in the absence of a request by defendant for a limiting instruction." *State v. Chandler*, 324 N.C. 172, 182 (1989).

In *State v. Alexander*, the defendant argued the trial court plainly erred in admitting an officer's testimony regarding a tip he received from a detective in his unit because the testimony was inadmissible hearsay. 177 N.C. App. 281, 282 (2006). At trial, the officer specifically testified that one of the detectives told him that a certain individual claimed to have "some information that may be important to one of his cases[,]" and discussed the conversation he had with that certain individual. *Id.* at 284. On appeal, this Court reasoned that the officer's testimony was not admitted to prove the truth of the matter asserted; rather, the officer's testimony was offered to explain to the jury how the officer obtained information that led him to

- 8 -

include the defendant's photograph in a lineup. *Id.* We concluded that the officer's testimony was properly offered to explain the officer's subsequent conduct, and thus, we held that the trial court did not err. *Id.*

Likewise, in the instant case, Smith's testimony was not offered to prove that Defendant was "beating the crap out of" Douglas, but rather, to explain why she went to Douglas's room, asked Defendant to leave, and called law enforcement. *See id.* Before Smith received the phone call, she had no reason to go to Douglas's room that night; however, her testimony about the call and the hotel guest's statement explained to the jury why she left the front desk, went to Douglas's room, and spoke to Defendant. As such, Smith's testimony was admissible for the non-hearsay purpose of describing her subsequent conduct. *See Castaneda*, 215 N.C. App. at 147. Moreover, because Defendant failed to request a limiting instruction, the trial court was not required to provide one; thus, the trial court did not err, let alone plainly err, in admitting the evidence. *See Chandler*, 324 N.C. at 182.

## B. Motion to Reopen Evidence

Defendant next argues that the trial court abused its discretion in denying Defendant's request to reopen evidence after the jury had retired to deliberate. Specifically, Defendant contends that Officer Moreno's testimony would have "resolved a factual difference between two different accounts, and fundamentally undermined Douglas's credibility[.]" We disagree.

The trial court "may permit any party to introduce additional evidence at any

time prior to verdict." N.C.G.S. § 15A-1226 (2023). "It is well settled that it is within the discretion of the trial judge to reopen a case and to admit additional evidence after both parties have rested and even after the jury has retired for its deliberations." *State v. Shutt*, 279 N.C. 689, 695 (1971). This Court will not disturb a trial court's ruling declining to reopen evidence "absent a manifest abuse of discretion." *State v. Davis*, 317 N.C. 315, 318 (1986); *see also State v. Wilson*, 263 N.C. App. 567, 581 (2019) (holding the trial court did not abuse its discretion in declining to reopen the case where "we [saw] nothing in its justification to be manifestly unsupported by reason"). An abuse of discretion occurs when "there is 'no rational basis' for it." *State v. Mutakbbic*, 317 N.C. 264, 274 (1986) (quoting *State v. Parker,* 315 N.C. 249, 258–59 (1985)).

In *State v. Woodard*, this Court held that a trial court does not abuse its discretion in refusing to reopen the evidence when a party makes a tactical decision not to elicit testimony. 102 N.C. App. 687, 694 (1991). In *Woodard*, the defendant claimed that his alternative personality committed all the offenses the defendant was charged with. *Id.* at 693. Despite having the capability to call out the defendant's alternative personality, defense counsel made the tactical decision not to elicit testimony from the defendant's alternative personality because they feared it would look like a "Hollywood ploy" to the jury. *Id.* at 694. During the charge conference, however, the alternative personality appeared, and defense counsel moved to reopen the evidence to allow the alternative personality to testify, arguing that his testimony

would tend to exculpate the defendant. *Id.* at 693. In reviewing the record, this Court reasoned that since the defense attorneys made the tactical decision not to illicit testimony from the alternative personality during trial, the trial court did not abuse its discretion in denying the defendant's motion to reopen evidence when the alternative personality appeared. *Id.* at 694.

Likewise, here, defense counsel made the tactical decision not to question Officer Moreno about the contents of the surveillance video at trial. In his brief to this Court, Defendant contends that he did not learn of the video's existence until trial and did not ask questions about what Officer Moreno saw on the video because "[i]t is a cardinal rule that an attorney not ask a question on cross-examination unless they know the answer to it." Where Defendant had the opportunity to illicit further testimony from Officer Moreno, but made the tactical decision not to, the trial court does not abuse its discretion in refusing to reopen the evidence. *See id.*

Moreover, our review of the trial court's justifications in denying Defendant's motion to reopen evidence were not manifestly unsupported by reason; rather, as the trial court thoroughly explained, Defendant's motion was denied because Defendant had the opportunity to put on evidence but failed to do so. We discern nothing in the trial court's justifications as being manifestly unsupported by reason and therefore conclude the trial court did not abuse its discretion by denying Defendant's motion to reopen the evidence. *See Wilson*, 263 N.C. App. at 581.

**C. Sentencing**

Defendant's final argument is that the trial court "erred and abused its discretion" when it increased Defendant's sentence from a mitigated sentence to the maximum permissible presumptive range after Defendant indicated he was going to appeal. We disagree.

Generally, "a judgment is presumed to be valid and will not be disturbed absent a showing that the trial judge abused his discretion." *State v. Pickens*, 385 N.C. 351, 359–60 (2023). "The extent to which a trial court imposed a sentence based upon an improper consideration[, however,] is a question of law subject to *de novo* review." *State v. Pinkerton*, 205 N.C. App. 490, 494 (2010), *rev'd on other grounds*, 365 N.C. 6 (2011). *Accord State v. Johnson*, 265 N.C. App. 85, 87 (2019); *State v. Mills*, 296 N.C. App. 256, 259 (2024); *State v. Ruffin*, 298 N.C. App. 104, 118–19 (2025). Accordingly, we review de novo whether the trial court erred in increasing Defendant's sentence after he indicated he was going to appeal.

"A sentence within the statutory limit will be presumed regular and valid." *State v. Boone*, 293 N.C. 702, 712 (1977). The presumption of regularity may be overcome "[i]f the record discloses that the court considered irrelevant and improper matter in determining the severity of the sentence." *Id.* The presumption of regularity, however, is not overcome where there is an "ambiguous statement capable of multiple interpretations[.]" *Pickens*, 385 N.C. at 364. "[W]hen determining whether a reasonable inference can be made that the court had" considered an improper purpose, this Court must examine "the entire context of a trial judge's statements."

*See id.* at 363 (reviewing the entire context of the trial judge's statements to determine whether it could be reasonably inferred from the trial judge's statements that he based his decision on the defendant's decision to plead not guilty).

During a sentencing hearing, the trial judge may not consider "a defendant's refusal to accept a plea offer, the financial status of a defendant, the religious beliefs of either a defendant or the judge, and conduct not included in the indictment[.]" *Johnson*, 265 N.C. App. at 88 (citations omitted). On the other hand, "a court is not confined to evidence relating to the offense charged[,]" *State v. Cooper*, 238 N.C. 241, 244 (1953), and it "may consider such matters as the age, character, education, environment, habits, mentality, propensities and record of the defendant[,]" *State v. Morris*, 60 N.C. App. 750, 754–55 (1983). Moreover, this Court has held that a trial judge does not commit error when he considers "conduct and appearance of the defendant in court." *State v. Stallings*, 4 N.C. App. 184, 191 (1969) (holding it was not error for the trial judge to consider the defendant's conduct, appearance, and demeanor while he was in court).

In the instant case, the trial judge did not explicitly state an improper purpose, and thus, we must examine the entire context of the judge's statements. The Record indicates that when the trial court proceeded to the sentencing hearing and Douglas began giving her statement, Defendant interrupted her to say that she was "lying." As the sentencing hearing progressed, Defendant continued to interrupt counsel and the court, stating a variety of things, including, "I know you're going to give me the

max, but I'll be home in two years. I'm going to win my appeal. I promise you that." The State asked the trial court to sentence Defendant at the top of the presumptive range, and defense counsel asked the court to consider mitigating factors. Before sentencing Defendant, the trial judge indicated that he was "at the mitigated range on this[,]" but nevertheless changed his mind after "[Defendant] said go ahead and do it." After entering the order, the trial judge stated, "I was still going to sentence him in the mitigated range. He talked himself into it."

We agree with the State that it cannot be reasonably inferred from the trial judge's statements that he was imposing the maximum permissible sentence based on Defendant's intent to appeal, or any other improper purpose. Rather, it appears that the judge sentenced Defendant based on his record, mentality, demeanor, and conduct. *See Stallings*, 4 N.C. App. at 191. While it may be inferred that Defendant "talked himself" into a higher sentence when he said he was going to win his appeal, it is also reasonable to infer that the trial judge meant Defendant talked himself into a higher sentence by continually interrupting the proceedings with unnecessarily profane comments. Where the trial court's statement that Defendant "talked himself into it" is an ambiguous statement and can have multiple interpretations, such an ambiguous statement does not overcome the presumption of regularity. *See Pickens*, 385 N.C. at 364. Therefore, because Defendant failed to overcome the presumption of regularity, we hold that the trial court did not err.

### IV. <u>Conclusion</u>

Upon review, we conclude: first, the trial court did not prejudicially err in admitting Smith's testimony—regarding statements made to Smith by a hotel guest in the room next to the room in which Douglas and Defendant were staying—where the evidence was admitted for a non-hearsay purpose; second, the trial court did not abuse its discretion to reopen the evidence, where Defendant failed to show the trial court's reasoning was unsupported by reason; and third, the trial court did not err in increasing Defendant's sentence, where the sentencing term was within the permissible range and Defendant failed to show that the trial court acted with an improper purpose.

NO ERROR.

Judges GORE and FREEMAN concur.

Report per Rule 30(e).